## TENNESSEE FARMERS LIFE REASSURANCE COMPANY

v.

## Linda ROSE et al.

Supreme Court of Tennessee, at Knoxville.

Sept. 6, 2007 Session.

Oct. 2, 2007.

Paul T. Coleman and Vivian L. Crandall, Knoxville, Tennessee, for the appellant Linda S. Rose.

Jennifer E. Raby, Rockwood, Tennessee, for the appellees, Kristin N. Taylor, Edward R. Langley, Phillip M. Langley, and Ethan E. Langley.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

We granted permission to appeal in this case to determine whether the decedent's durable power of attorney authorized her attorney-in-fact to change the beneficiary of the decedent's life insurance policy. For the reasons stated below, we conclude that the durable power of attorney authorized the attorney-in-fact to change the ben-

eficiary of the policy. Accordingly, we reverse the judgments of the lower courts; however, because our holding does not resolve all of the issues raised in the pleadings, we remand this case to the trial court for further proceedings.

### I. SUMMARY OF FACTS & PROCEEDINGS BELOW

On October 20, 1999, Brenda Gail Langley ("Langley") purchased a $50,000 life insurance policy from the plaintiff, Tennessee Farmers Life Reassurance Company ("Tennessee Farmers"). Langley designated three of her four children and one grandchild as the named beneficiaries of the policy; those individuals are Kristin N. Taylor, Edward R. Langley, Phillip M. Langley, and Ethan E. Langley (the child of Edward Langley). The policy provided that the beneficiaries would share equally in the proceeds and also provided that the insured could change the beneficiary/beneficiaries.

On August 21, 2002, Langley executed a durable power of attorney, appointing her sister, Linda S. Rose ("Rose"), as her attorney-in-fact. In pertinent part, the power of attorney provided:

"I BRENDA GAIL LANGLEY ... do hereby appoint and constitute LINDA SUE ROSE, my true and lawful attorney for me and in my name and on my behalf:

... to transact all insurance business on my behalf, to apply for or continue policies, collect profits, file claims, make demands, enter into compromise and settlement agreements, file suit or actions or take any other action necessary or proper in this regard; . . . .

Giving and granting unto the said LINDA SUE ROSE, my said attorney, full power and authority to do, execute and perform all and every other act and thing whatsoever, without any limitation

whatever and without being confined to the specific acts hereinabove set out, requisite or necessary to be done in and about the premises as fully and to all intents and purposes as I might or could do and I hereby ratify and confirm all that LINDA SUE ROSE, my said attorney, shall lawfully do or cause to be done by virtue of these presents, and for me and in my name and on my behalf. This power of attorney shall not be affected by any subsequent disability or incapacity of mine if such should occur. It is my express intent that the authority herein conferred upon my said attorney shall be exercisable in all events notwithstanding my subsequent disability or incapacity."

On October 28, 2002, Rose, purportedly acting as Langley's attorney-in-fact, signed a "Customer Service Request" revoking Langley's original designation of beneficiaries (Langley's three children and grandchild) and naming Rose as sole beneficiary. Rose signed the document as "Brenda G. Langley, P.O.A. Linda Rose." The form also was signed by Langley's insurance agent and was submitted to the insurance company.

Langley died on March 29, 2003. Five days later, Rose filed a claim for the proceeds of the policy. In July and early August 2003, the deceased's three children and grandchild filed separate claims for the policy proceeds.

Due to the competing claims for the life insurance proceeds, Tennessee Farmers filed this interpleader action pursuant to Tennessee Rule of Civil Procedure 22.01.[1] Tennessee Farmer's complaint named Rose and the four original beneficiaries as defendants. The respective defendants filed answers to the complaint. The original beneficiaries subsequently filed a motion for summary judgment in which they asserted that Rose did not have the authority under the power of attorney to change the beneficiary designation on the policy. Rose responded to the motion, asserting that the power of attorney granted her the power to "transact all insurance business" and "to perform all and every other act and thing whatsoever, without any limitation...." Based upon that language in the power of attorney, Rose argued that she was authorized to change the beneficiary designation to herself.

The trial court granted the original beneficiaries' motion for summary judgment, ruling that Rose "did not have the specific authority under the Durable General Power of Attorney executed by the decedent insured to execute a change of beneficiary form applicable to the life insurance policy at issue." The Court of Appeals, with one judge dissenting, affirmed the trial court's judgment.

Rose filed an application for permission to appeal to this Court. We granted permission to appeal to address the issue of whether the deceased's durable power of attorney authorized her attorney-in-fact to change the beneficiary of her life insurance policy.

## II. STANDARD OF REVIEW

■ The trial court's grant of summary judgment is purely a question of law. Accordingly, our review is de novo, and no presumption of correctness attaches to the lower courts' judgments. *Cumulus Broad. Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007).

---

1. Tennessee Rules of Civil Procedure 22.01 provides, in pertinent part: "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."

## III. ANALYSIS

■ A written power of attorney that states it is not affected by the subsequent disability or incapacity of the principal is a "durable power of attorney." *See* Tenn. Code Ann. § 34–6–102 (2001). The power of attorney executed by Langley provides that it "shall not be affected" by her subsequent disability or incapacity, if any. Consequently, the instrument at issue is a durable power of attorney, which should be construed in light of the Uniform Durable Power of Attorney Act, Tennessee Code Annotated sections 34–6–101 to –110 (2001) ("the Act").

We begin our analysis by examining two particular sections of the Act, sections 34–6–108 and 34–6–109. Section 34–6–108(a) provides:

> Upon the principal clearly expressing an intention to do so within the instrument creating a power of attorney, the language contained in § 34–6–109 may be incorporated into such power of attorney *by appropriate reference.* The provisions so incorporated shall apply to the attorney-in-fact with the same effect and subject to the same judicial interpretation and control in appropriate cases, as though such language were set forth verbatim in such instrument.

Tenn.Code Ann. § 34–6–108(a) (2001) (emphasis added).

Section 34–6–109 then proceeds to list twenty-two various powers which, pursuant to section 34–6–108, may be incorporated by reference into a durable power of attorney. In pertinent part, section 34–6–109(5) authorizes an attorney-in-fact to "[a]cquire, maintain, cancel *or in any manner deal with* any policy of life, accident, disability, hospitalization, medical or casualty insurance, and prosecute each claim for benefits due under any policy[.]" (emphasis added.) The words "or in any manner deal with any policy of life ...

insurance" *could* be interpreted to include the power to change the beneficiary of a life insurance policy. However, those words must be read *in pari materia* with section 34–6–108(c) which expressly provides:

> Nothing contained in this section and § 34–6–109 shall be construed to vest an attorney-in-fact with, or authorize an attorney-in-fact to exercise, any of the following powers:
>
> (5) Change beneficiary designations on any death benefits payable on account of the death of the principal from any life insurance policy, employee benefit plan, or individual retirement account[.]

Tenn.Code Ann. § 34–6–108(c) (2001).

In light of section 34–6–108(c)(5), the phrase "in any manner deal with any policy of life ... insurance" as used in 34–6–109(5) must be read to *exclude* the power to change the beneficiary of a life insurance policy. Despite section 34–6–108(c)(5)'s exclusion, however, section 34–6–108(b) provides:

> Nothing contained in this section and § 34–6–109 shall be construed to limit the power of the principal either to:
>
> (1) Grant any additional powers to the attorney-in-fact, *including any powers otherwise excluded under subsection (c);* or
>
> (2) Delete any of the powers otherwise granted in § 34–6–109.

Tenn.Code Ann. § 34–6–108(b) (2001) (emphasis added).

■ While the foregoing sections are somewhat cumbersome to read, they essentially provide that, in cases in which the provisions of section 34–6–109 are incorporated by reference into the power of attorney, an attorney-in-fact is not authorized to change the beneficiary of the principal's

life insurance policy *unless* the principal has expressly authorized the attorney-in-fact to do so within the power of attorney. The appellees (the original beneficiaries under Langley's policy) rely upon these statutory provisions and argue that Langley's power of attorney did not expressly authorize Rose to change the beneficiary/beneficiaries of Langley's life insurance policy. Thus, they contend that the trial court did not err in granting their motion for summary judgment.

■ We note that Langley's power of attorney did not mention any provisions of the Act, nor did her power of attorney otherwise clearly express an intention to adopt the language contained in section 34–6–109. For that reason, our resolution of this case does not involve the application of sections 34–6–108 and 34–6–109; instead, the language of Langley's power of attorney solely controls the attorney-in-fact's power, if any, to change the beneficiary of Langley's life insurance policy.

■ The execution of a power of attorney creates a principal-agent relationship. *E.g. Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296–97 n. 1 (Tenn.Ct.App.2001). Unless otherwise constrained by law or public policy,[2] a person executing a power of attorney may empower his or her agent to do the same acts, to make the same contracts, and to achieve the same legal consequences as the principal would be personally empowered to do. Restatement (Second) of Agency § 17 (1958); 12 Samuel Williston, *Treatise on the Law of Contracts* § 35:9, at 188 (Richard A. Lord ed., 4th ed.1999).

■ The authority of the agent may be couched in general terms and may be as broad as the principal decides to make it. In the absence of specific legal requirements, a power of attorney may be in any form and may be executed in accordance with any recognized common-law method for executing written instruments. *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 454 (Del.1982). "The language of a power of attorney determines the extent of the authority conveyed." *Armstrong v. Roberts*, 211 S.W.3d 867, 869 (Tex.Ct.App.2006). The more specific a power of attorney is concerning the performance of particular acts, the more the agent is restricted from performing acts beyond the specific authority granted. *In re Estate of Kurrelmeyer*, 179 Vt. 359, 895 A.2d 207, 211 (2006); *cf.* Restatement (Second) of Agency §§ 33 cmt. b & 37(2).

■ A power of attorney is a written instrument that evidences to third parties the purpose of the agency and the extent of the agent's powers. *Lempert v. Singer*, 766 F.Supp. 1356, 1360 (D.Vi.1991); *Realty Growth Investors*, 453 A.2d at 454; *Ho v. Presbyterian Church of Laurelhurst*, 116 Or.App. 115, 840 P.2d 1340, 1343 (1992); *Schall v. Gilbert*, 169 Vt. 627, 741 A.2d 286, 289 (1999). It should be construed using the same rules of construction generally applicable to contracts and other written instruments, except to the extent that the fiduciary relationship between the principal and the agent[3] requires otherwise. *In re Trust of Jameison*, 300 Mont.

---

2. For example, other jurisdictions have held that a principal may not use a power of attorney to authorize another to create a will on his or her behalf. *In re Estate of Garrett*, 81 Ark.App. 212, 100 S.W.3d 72, 76 (2003); *Smith v. Snow*, 106 S.W.3d 467, 470 (Ky.Ct.App.2002).

3. Agents acting pursuant to an unrestricted power of attorney have a fiduciary relationship with the principal. *See Askew v. Askew*, 619 S.W.2d 384, 386 (Tenn.Ct.App.1981); Restatement (Second) of Agency §§ 33 cmt. b & 39.

418, 8 P.3d 83, 87 (2000); *In re Estate of Littlejohn,* 698 N.W.2d 923, 925 (N.D. 2005); Restatement (Second) of Agency § 32.

The legal effect of a written contract or other written instruments is a question of law. *In re Trust of Jameison,* 8 P.3d at 86–87 (power of attorney); *In re Estate of Littlejohn,* 698 N.W.2d at 926 (power of attorney); *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn.1999) (written contract). Thus, powers of attorney should be interpreted according to their plain terms. *Muller v. Bank of Am., N.A.,* 28 Kan.App.2d 136, 12 P.3d 899, 902 (2000); *see Buettner v. Buettner,* 183 S.W.3d 354, 359 (Tenn.Ct.App.2005). There is no room for the construction of a power of attorney that is not ambiguous or uncertain, and whose meaning and portent are perfectly clear. *See Geren v. Geren,* 29 Kan.App.2d 565, 29 P.3d 448, 451–52 (2001). However, when the meaning of a power of attorney is unclear or ambiguous, the intention of the principal, at the time of the execution of the power of attorney, should be given effect. *Brookfield Prod. Credit Ass'n v. Weisz,* 658 S.W.2d 897, 899–900 (Mo.Ct.App.1983); Restatement (Second) of Agency § 34 cmt. b. While the parol evidence rule applies, Restatement (Second) of Agency § 48, the courts may arrive at the meaning of a power of attorney by considering the five factors identified in Restatement (Second) of Agency section 34.

A formal written instrument that has been carefully drawn can be assumed to spell out the intent of the author with a high degree of particularity. Thus, an instrument like a power of attorney should be subjected to careful scrutiny in order to carry out the intent of the author and no more. There should be neither a "strict" nor a "liberal" interpretation of the instrument, but rather a fair construction that carries out the author's intent as expressed in the instrument. *In re Estate of Kurrelmeyer,* 895 A.2d at 211; Restatement (Second) of Agency § 34, cmt. h.

Applying the foregoing principles to the specific power of attorney executed by Langley, we hold that the power of attorney authorized Rose to change the beneficiary/beneficiaries of Langley's life insurance policy. In pertinent part, the power of attorney authorized Rose "to transact *all* insurance business on [Langley's] behalf, to apply for or continue policies, collect profits, file claims, make demands, enter into compromise and settlement agreements, file suit or actions *or take any other action necessary or proper in this regard.*" (emphases added). As stated above, "[t]here is no room for construction of a power of attorney that is not ambiguous or uncertain, and whose meaning and portent are perfectly clear." Langley's power of attorney is neither ambiguous nor uncertain-it grants Rose the authority "to transact all insurance business" and to "take any other action in this regard." There simply is no escaping the significance of the word "all" and the words "take any other action in this regard" in delineating the scope of the insurance business which Rose was authorized to conduct. By authorizing Rose "to transact all insurance business" and "to take any other action in this regard," the power of attorney plainly and unambiguously authorized her to conduct any and all insurance-related business on Langley's behalf, which includes the power to change the beneficiary of Langley's life insurance policy. Just as Rose could have canceled this policy, purchased another one, and named a new beneficiary for the second policy, she had authority to make this change. If we were to construe the words of Langley's power of

attorney to exclude the power to change beneficiary designations, we would effectively be rewriting Langley's power of attorney from authorizing Rose to transact "all" insurance business on Langley's behalf to authorizing Rose to transact "nearly all" of Langley's insurance business.[4]

If Langley's power of attorney had incorporated by reference the powers listed in Tennessee Code Annotated section 34–6–109, it would have been necessary for the power of attorney to have used the words "change beneficiary designations" or "change beneficiaries" in order to authorize Rose to make such changes, and the words "to transact all insurance business" would have been insufficient to confer that power on the attorney-in-fact. Langley's power of attorney, however, did not incorporate by reference the powers listed in section 34–6–109, and her power of attorney therefore did not trigger the application of section 34–6–108(c)(5). Therefore, without the limitation of section 34–6–108(c)(5), the words of Langley's power of attorney sufficiently authorized her attorney-in-fact to change her beneficiary designation. This holding, however, does not resolve all the issues arising out of this case.

■ This case was decided in the trial court on the original beneficiaries' motion for summary judgment. The *sole* ground raised in that motion was whether Langley's power of attorney authorized Rose to change the life insurance beneficiary. In granting the original beneficiaries' motion for summary judgment, the trial court pretermitted all of the other defenses raised in the original beneficiaries' answer to the complaint. In their answer to the complaint filed by Tennessee Farmers, the original beneficiaries denied that Langley "had the capacity to execute said durable general power of attorney given her physical and mental condition." They went on to allege "that if the decedent did indeed sign said durable general power of attorney, said execution was not of her own free will but was rather the result of the duress, coercion, control and/or undue influence exercised by the defendant Linda [S.] Rose upon the decedent." Their answer also asserted that Rose's action in changing the beneficiary of Langley's life insurance policy to herself "was a violation of [Rose's] fiduciary duty and was done for her sole benefit and to the detriment of the decedent and the decedent's children and grandchild."

Our holding that Langley's power of attorney granted Rose the authority to change the beneficiary designation does not foreclose any of those defenses. *See Matlock v. Simpson,* 902 S.W.2d 384, 386 (Tenn.1995) (an attorney-in-fact under an unrestricted power of attorney has a confidential relationship with the principal, and as such, transactions that benefit the agent are looked upon with suspicion); *Childress v. Currie,* 74 S.W.3d 324, 328 (Tenn.2002) (where a confidential relationship exists, a transaction which provides a benefit to the dominant party gives rise to a presumption of undue influence that may be rebutted only by clear and convincing evidence of the fairness of the transaction). Instead, our opinion today clarifies that Rose had the legal authority to alter the beneficiary designation. It does not, however, address whether her chosen designation, i.e. to herself, was valid under other principles of law. We therefore conclude that this case should be remanded to the trial court for further proceedings concerning the preter-

---

**4.** The facts of this case illustrate the critical importance of carefully considering, when drafting a durable power of attorney, whether or not to incorporate by reference the various powers listed in Tennessee Code Annotated section 34–6–109.

mitted issues. Accordingly, we express no opinion as to the ultimate resolution of the issues arising out of these pretermitted issues.

### IV. CONCLUSION

For the reasons stated above, we reverse the judgment of the Court of Appeals and remand to the trial court for further proceedings. The costs on appeal are taxed to appellees, Kristin N. Taylor, Edward R. Langley, Phillip M. Langley, and Ethan E. Langley, for which execution may issue if necessary.