IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 17, 2008 Session

VICKY JONES, INDIVIDUALLY AND AS THE DAUGHTER OF MARIE HURST,
DECEASED, ALSO AS REPRESENTATIVE OF THE HEIRS OF THE ESTATE OF
MARIE HURST AND/OR FOR THE USE AND BENEFIT OF THE HEIRS AND ESTATE
OF MARIE HURST, DECEASED
v.
KINDRED HEALTHCARE OPERATING, INC. ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-005402-06    Kay Robilio, Judge

No. W2007-02568-COA-R3-CV  - Filed August 20, 2008

We here review a trial court's denial of the defendants' motion to compel arbitration. Each defendant is alleged to have been involved in the ownership and operation of a nursing home facility at which the mother of the plaintiff was a resident prior to her death. The mother had, several years earlier, executed a general durable power of attorney naming one of her daughters as her attorney-in-fact. Later that daughter signed a letter purporting to give another of the mother's daughters certain powers. This daughter then secured the admission of their mother to the nursing facility in question here and in the admissions process signed an arbitration agreement. The defendants contend that her signature is effective to require arbitration of the claims raised in this suit. We conclude that the signing daughter did not possess the requisite authority to enter into a binding arbitration agreement. Accordingly, we affirm the trial court's decision and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

WALTER C. KURTZ, SR. J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

F. Laurens Brock, Alix C. Michel, and Jacob C. Parker, Chattanooga, Tennessee, for the appellants, Kindred Healthcare Operating, Inc. *et al.*

Susan Nichols Estes, Deborah Truby Riordan, and Cameron C. Jehl, Memphis, Tennessee, and Brian G. Brooks, Greenbrier, Arkansas, for the appellee, Vicky Jones.

## OPINION

In this appeal we address a limited question: May an attorney-in-fact holding authority under a general durable power of attorney convey to a third party the authority to make healthcare decisions for the principal—namely, the authority to enter into an arbitration agreement collateral to a nursing home admission? We conclude that she may not. Accordingly, we affirm the decision of the trial court and remand for further proceedings.

### I. BACKGROUND

On May 8, 2001, Marie Hurst executed a durable power of attorney and named one of her daughters, Brenda Blackard, as her attorney-in-fact. The power of attorney reads as follows:

### DURABLE POWER OF ATTORNEY

The subsequent disability or incapacity of the principal shall not affect this power of attorney.

KNOW ALL MEN BY THESE PRESENTS: That I, Marie Gray Hurst . . . have made, constituted and appointed, and by these presents do make, constitute and appoint Brenda Blackard . . . my true and lawful attorney, for me and in my name, place and stead to handle my financial and personal affairs. Said attorney shall be able to accept and receive all sums of money which are due and payable to me and to do, execute and perform all and every other act or acts, thing or things in law needful and necessary to be done, or in the opinion of the attorney should be done, signed or performed in and about the premises, of every nature and kind whatsoever, to all intents and purposes whatsoever, as fully and effectually as I could do personally present and acting. The enumeration of specific powers hereunder shall not in any way limit the general powers herein, pursuant to T.C.A. § 34-6-109 *et seq.*:

> Receive from or disburse to any source whatsoever moneys through checking or savings or other accounts or otherwise, endorse, sign and issue checks, withdrawal receipts or any other instrument and open or close any accounts in the principal's name alone or joint with any other persons;

> Acquire, maintain, cancel or in any manner deal with any policy of life, accident, disability, hospitalization, medical or casualty insurance, and prosecute each claim for benefits due under any policy;

> Have free and private access to any safe deposit box in the principal's individual name, alone or with others, in any bank, including

-2-

authority to have it drilled, with full right to deposit and withdraw therefrom or to give full discharge therefor;

Request, receive and review any information verbal or written, regarding the principal's affairs or the principal's physical or mental health, documents that may be required in order to obtain such information, and disclose such information to such persons, organizations, firms or corporations as said attorney in fact shall deem appropriate to do so.

And I hereby ratify and confirm all lawful acts done by any said attorney by virtue hereon.

This power of attorney was signed by Ms. Hurst and notarized.

In the spring of 2006, Ms. Hurst required the care of a nursing home. Another of her daughters, Rebecca Sawyer, undertook to assist in her mother's placement. On May 2, 2006, Ms. Blackard composed a letter which stated:

I, Brenda Blackard[,] duly named Power of Attorney for Marie Hurst, do hereby give Rebecca Sawyer the right to make medical and financial decisions in and for the [w]ell-being of Marie Hurst.

Ms. Blackard's signature on this letter was notarized. There is nothing to indicate that Ms. Hurst herself had ever asked Ms. Sawyer to make medical or healthcare decisions on her behalf.

Following the signing of this letter, Ms. Sawyer went to secure her mother a place at the Cordova Rehabilitation and Nursing Center (Cordova). During the admissions process, Ms. Sawyer met with Cordova's admissions coordinator, Michelle Helms. Ms. Blackard was not present. During this process, Ms. Sawyer signed a number of forms. Included in these was an alternative dispute resolution agreement (ADR Agreement) providing that, among other things, Ms. Hurst would have to submit any and all causes of action arising from her residency at the Cordova facility to binding arbitration.[1] This also included an express waiver of her right to a trial whether by judge or jury. Neither Ms. Hurst nor Ms. Blackard ever signed this ADR Agreement. It appears uncontested that Ms. Hurst was not present during the admissions process and that she had never authorized Ms. Sawyer, whether orally or in writing, to act for her.[2]

---

[1] The date on this agreement is May 3, 2006.

[2] This contrasts with the oral authority given in a recent case from this Court: *Necessary v. Life Care Centers of America, Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636, at *5 (Tenn. Ct. App. Nov. 16, 2007).

Ms. Hurst was then admitted to Cordova. It is alleged that she subsequently suffered injuries there. Ms. Hurst later died while a resident at Cordova.

Suit was initiated on October 3, 2006 when Vicky Jones, another of Ms. Hurst's children, filed a complaint in the Circuit Court for Shelby County. Named as defendants were the individual administrator at Cordova and the various affiliated business entities responsible for the Cordova facility (Kindred).[3] In her amended complaint, Ms. Jones alleges several causes of action against Kindred, including medical malpractice, negligence, and violations of the Tennessee Adult Protection Act. No answer was filed. Instead, on November 15, 2006, a "Motion to Dismiss and/or to Compel Arbitration" was filed by Kindred, and discovery was taken regarding the execution of the ADR Agreement.

This issue was heard by the trial court on August 17, 2007. Kindred's motion was denied orally, and this was subsequently reflected in an order dated September 5, 2007. The court below concluded that "to the extent [the power of attorney] could be assigned . . . the purported assignment was not sufficient to assign the power to enter into a stand alone arbitration agreement." Kindred timely filed a notice of appeal on October 4, 2007 pursuant to Tenn. Code Ann. § 29-5-319.

## II. ISSUES PRESENTED

Kindred states the issues presented on appeal as follows:

1. Whether the Shelby County Circuit Court erred in holding that Rebecca Sawyer was not authorized to execute an arbitration agreement on behalf of Marie Hurst, and thus further erred in denying Appellant's Motion to Compel Arbitration.

2. Whether the Shelby County Circuit Court erred when failing to determine whether Brenda Blackard, acting as an agent under Marie Hurst's Power of Attorney, was authorized to contract for, employ and/or appoint Rebecca Sawyer as a successive agent pursuant to Tennessee's Uniform Durable Power of Attorney Act, Tenn. Code Ann. §§ 34-6-101, *et seq.*

3. Whether the Shelby County Circuit Court erred in finding that any "assignment or transfer of power" by Brenda Blackard to Rebecca Sawyer under the Power of Attorney document was not sufficient to clothe Ms. Sawyer with authority to enter into a stand alone arbitration agreement between Marie Hurst and Appellants.

Ms. Jones, the appellee, frames the issues on appeal this way:

---

[3] Specifically, the defendants named are as follows: Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; Kindred Nursing Centers East, LLC; Kindred Hospitals Limited Partnership d/b/a Cordova Rehabilitation and Nursing Center; and Renee B. Tutor, in her capacity as administrator of Cordova Rehabilitation and Nursing Center. At some point, John E. Palmer was substituted for Ms. Tutor. We will refer to all of these defendants collectively as "Kindred" for ease of reference.

1. Whether the trial court correctly determined that Marie Hurst is not bound by the Kindred arbitration agreement because the May 2, 2006 document under consideration did not bestow unto Rebecca Sawyer authority to bind her mother to an arbitration agreement.

2. Whether Marie Hurst gave to Brenda Blackard authority to assign or delegate to others her discretionary decision-making authority under the power of attorney.

3. Whether Kindred's arbitration agreement, as presented to Rebecca Sawyer, is unconscionable.

We would recast the inquiry somewhat so as to focus on whether or not Ms. Blackard had the ability to delegate to her sister, Ms. Sawyer, the power she held under the durable power of attorney. Only if this question is answered in the affirmative need the Court proceed to consider the issue of whether or not the durable power of attorney held by Ms. Blackard was sufficient to allow her to enter into the binding ADR Agreement at issue here.

### III. DISCUSSION

This case is one of a series which explores the parameters of the authority of persons purporting to hold written powers of attorney or acting under authority conveyed orally to enter into binding arbitration agreements during the nursing home admissions process. *See, e.g., Owens v. Nat'l Health Corp.*, __ S.W.3d __, No. M2005-01272-SC-R11-CV, 2007 WL 3284669 (Tenn. Nov. 8, 2007) (holding that power of attorney document authorized attorney-in-fact to enter into arbitration agreement on behalf of principal), *petition to rehear granted* (Tenn. Feb. 7, 2008); *Thornton v. Allenbrooke Nursing and Rehabilitation Ctr.*, No. W2007-00950-COA-R3-CV, 2008 WL 2687697 (Tenn. Ct. App. July 3, 2008) (holding that daughter did not have authority to enter into arbitration agreement); *Hendrix v. Life Care Ctrs. of America*, No. E2006-02288-COA-R3-CV, 2007 WL 4523876 (Tenn. Ct. App. Dec. 21, 2007) (holding that durable power of attorney was not effective at the time of mother's admission because mother was competent at the time of admission); *Necessary v. Life Care Ctrs. of America, Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636 (Tenn. Ct. App. Nov. 16, 2007) (holding that wife had oral authorization from her husband to enter into arbitration agreement at the time of admission).

Here we encounter a still different factual scenario than has been previously confronted in prior cases. The record is clear that Ms. Blackard possessed a durable power of attorney from her mother, Ms. Hurst. *See* Tenn. Code Ann. §§ 34-6-101 *et seq.*[4] Under the durable power of attorney at issue, Ms. Hurst had authorized Ms. Blackard "to do any act that she could do if present." More specifically, Ms. Hurst authorized Ms. Blackard to "handle [her] financial and personal affairs . . . and to do, execute and perform all and every other act or acts, thing or things in law needful and

---

[4] The uniform durable power of attorney found at Tenn. Code Ann. §§ 34-6-101 *et seq.* must be contrasted with the durable power of attorney for healthcare, which is found at Tenn. Code Ann. §§ 34-6-201 *et seq.*

necessary to be done, or [that] in the opinion of the attorney should be done, signed, or performed[.]" The power of attorney also provided that "the enumeration of specific powers hereunder shall not in any way limit the general powers conferred herein, pursuant to [Tenn. Code Ann.] § 34-6-109 *et seq*."

Under Tenn. Code Ann. § 34-6-109, an attorney-in-fact is authorized to "generally do, sign or perform in the principal's name, place and stead any act, deed, matter or thing whatsoever, that ought to be done, signed or performed . . . of every nature and kind whatsoever . . . as fully and effectually as the principal could do if personally present and acting." Tenn. Code Ann. § 34-6-109(1). The attorney-in-fact is also statutorily empowered to "[c]ontract for or employ agents, accountants, advisors, attorneys and others for services in connection with the performance by the principal's attorney in fact of any powers in this section." *Id.* at § 34-6-109(9).

Here, Ms. Blackard—apparently occupied with other matters—asked Ms. Sawyer to assist their mother in obtaining admission to a nursing home. Ms. Blackard gave Ms. Sawyer a notarized letter stating that Ms. Sawyer was thereby entrusted with the "right to make medical and financial decisions in and for the well being of Marie Hurst." Kindred argues forcefully that, under Tenn. Code Ann. § 34-6-109(9), Ms. Blackard possessed the authority to delegate her powers to Ms. Sawyer and that, therefore, Ms. Sawyer could enter into the ADR Agreement with Kindred. Ms. Jones responds that Kindred's interpretation of this provision is overly expansive. We agree with Ms. Jones.

The authority conferred on the attorney-in-fact in Tenn. Code Ann. § 34-6-109(9) is that necessary to carry out the duties delegated by the principal. These would include the authority to hire lawyers, accountants, real estate agents, and the like. Hiring these individuals would be necessarily related to Ms. Blackard's handing of Ms. Hurst's "financial and personal affairs." Ms. Hurst chose Ms. Blackard to act on her behalf, and there is nothing in the language of the power of attorney document she signed or in Tenn. Code Ann. § 34-6-109(9) which would allow Ms. Blackard to choose what would effectively be a substitute attorney-in-fact. It is one thing for the attorney-in-fact to employ agents to carry out her duties; it is quite another for the attorney-in-fact to delegate her powers to another not chosen by the principal.

We have previously addressed how a power of attorney document should be understood and interpreted:

> It is the general rule that a power of attorney must be strictly construed and strictly pursued. Under this rule, the instrument will be held to grant only those powers which are specified, and the agent may neither go beyond nor deviate from the power of attorney—in other words, the act done must be legally identical with that authorized to be done. For example, an attorney in fact has no power to make a gift of his principal's property unless that power is expressly conferred on him by the instrument or unless such power arises as a necessary implication from the powers which are expressly conferred. Where the mode of exercising power is prescribed

-6-

in the instrument in which it is created, there must be a strict compliance therewith in every substantial particular. Where power is conferred on an agent by a power of attorney, the meaning of general words in the instrument is restricted by the context and construed accordingly and the authority given is construed strictly, so as to exclude the exercise of any power that is not warranted either by the terms actually used or as a necessary means of executing with effect the authority given. Accordingly a general clause in a power of attorney given for a specific purpose, authorizing the agent to do "any and every act" in the principal's name which he could do in person, must be construed to relate to the specific purpose, and does not constitute such agent a general agent.

*In re Estate of Coggins*, No. 03A01-9604-PB-00131, 1996 WL 571510, at *4-5 (Tenn. Ct. App. Oct. 3, 1996) (quoting 3 Am. Jur. 2d *Agency* §§ 31-32), *perm. app. denied* (Tenn. April 14, 1997); *see generally Tennessee Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 748-50 (Tenn. 2007); *Eaton ex rel. Johnson v. Eaton*, 83 S.W.3d 131, 134-35 (Tenn. Ct. App. 2001).

It has been further explained as follows:

Generally, an agent cannot delegate to someone tasks which his principal has assigned to him, which require the exercise of judgment or discretion. An agent cannot properly delegate to another the exercise of discretion in the use of a power held for the benefit of a principal. Or, as the rule has sometimes been stated, because the agency relationship, which is normally grounded on trust and confidence the principal places in his agent, is personal in nature, agency duties ordinarily cannot be delegated without the express authority of the principal where the duties involve any personal discretion, skill or judgment. An agent may generally, however, delegate the performance of ministerial or mechanical acts, and the performance of such delegated acts will be regarded as the act of the agent and binding on the principal.

3 Am. Jur. 2d *Agency* § 155 (2008). And, the *Restatement (Second) of Agency* succinctly states: "Unless otherwise agreed, an agent cannot properly delegate to another the exercise of discretion in the use of a power held for the benefit of the principal." *Restatement (Second) of Agency* § 18 (1958); *see also id.* at § 78.

Ms. Hurst selected Ms. Blackard to act as her attorney-in-fact. She did not select Ms. Sawyer to so act, and Ms. Blackard had no power to appoint Ms. Sawyer as a substitute attorney-in-fact. Wherever one draws the line between powers conferred on the attorney-in-fact that may not be delegated and powers of the attorney-in-fact that may be delegated because they are ministerial in nature or delegable under Tenn. Code Ann. § 34-6-109(9), obtaining admission to a nursing home and signing an arbitration agreement which includes a waiver of the right to a jury trial must fall on the side of the nondelegable powers. Ms. Blackard thus had no authority to delegate this power. Therefore, the ADR Agreement signed by Ms. Sawyer is unenforceable.

We have contemplated the logical implications of the position espoused by Kindred in this case. If its argument were accepted, then a person executing a durable power of attorney—having placed her trust in a designated attorney-in-fact—would face the possibility that the attorney-in-fact might delegate the authority to act on her behalf to someone who was not chosen by her and whose interests could be inimical to hers. Such a delegation was never contemplated by the law governing powers of attorney, and it is antithetical to the singular authority of the principal to designate her attorney-in-fact. The power of a principal to choose her attorney-in-fact is personal and inalienable. Only the principal or the courts can replace the selected attorney-in-fact.

We wish to make clear that the decision here is narrow and that there are several things which we have not decided in this case. Our opinion only addresses the ability of an attorney-in-fact to delegate to another the ability to enter into an arbitration agreement. Because it is unnecessary for this Court to reach the question, we express no opinion as to whether or not the durable power of attorney signed by Ms. Hurst in 2001—which was not a power of attorney for healthcare—carried with it the power to make medical decisions. Even if it did, this authority could not have been delegated to Ms. Sawyer. In addition, the other issues raised by Ms. Jones, such as the question of the unconscionability of the ADR Agreement, are pretermitted.

## IV. Conclusion

For the reasons stated above, the decision of the trial court denying arbitration is affirmed, and this case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Kindred and its surety for which execution may issue if necessary.

_____
WALTER C. KURTZ, SENIOR JUDGE