# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### March 11, 2015 Session

# ELIZABETH SANDERS, BY AND THROUGH HER NEXT OF KIN, TONITA MINTER v. HARBOR VIEW NURSING AND REHABILITATION CENTER, INC., ET AL.

### Appeal from the Circuit Court for Shelby County
### No. CT00386113      Robert L. Childers, Judge

_____

### No. W2014-01407-COA-R3-CV – Filed May 29, 2015

_____

This is an appeal from the denial of a motion to compel arbitration in a healthcare liability case. The Decedent executed a power of attorney in favor of her daughter, the Appellee, granting Appellee broad powers, but exempting healthcare decisions. The Decedent was subsequently admitted to the Appellant nursing facility. The Appellee signed the Decedent's admission contract and a separate, voluntary arbitration agreement. After the Appellee filed this action against the nursing facility and its managing companies, the Appellants filed motions to compel arbitration pursuant to the arbitration agreement signed at the time of the Decedent's admission. The trial court denied the motions. We affirm.

### Tenn. R. App. P. Rule 3; Judgment of the Trial Court is Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Howard B. Hayden and Kimberly G. Silvus, Nashville, Tennessee, for the appellants, Harbor View Nursing and Rehabilitation Center, Inc., and Tennessee Health Management, Inc.

Jeffrey C. Smith and Emily C. Taube, Memphis, Tennessee, for the appellant, American Health Companies, Inc.

Thomas R. Greer and Austin Fleming, Memphis, Tennessee, for the appellee, Tonita Minter.

# OPINION

## I. Background

Sometime in 2010, Elizabeth Sanders ("Decedent") suffered a "significant stroke." As of result of this stroke, she required 24-hour nursing care, a feeding tube, and a lift for mobility. The stroke also left Mrs. Sanders unable to communicate verbally, although she could communicate using gestures. Following the stroke, Mrs. Sanders became a patient at Camden Care Center ("Camden") in Minneapolis, Minnesota. Despite her health problems, Camden staff described Mrs. Sanders as "quite aware of her surroundings and […] able to understand and process conversations."

On April 24, 2012, Mrs. Sanders executed a statutory short form power of attorney ("power of attorney") in favor of her daughter, Tonita Minter ("Appellee"). The power of attorney was executed pursuant to Minnesota Statutes Annotated Section 523.23, and it grants Mrs. Minter the power "[t]o act for [Mrs. Sanders] in any way that [the Decedent] could act with respect to…" a multitude of matters, including banking transactions, business operating transactions, insurance transactions, fiduciary transactions, claims, litigation, and "all other matters."

Also on April 24, 2012,[1] the Decedent executed a durable power of attorney for healthcare ("healthcare power of attorney") in favor of the Appellee pursuant to Minnesota Statutes Annotated Section 145C.01, *et seq.* This healthcare power of attorney designated the Appellee as the Decedent's "agent (my attorney-in-fact) to make any health care decisions for me—when, in the judgment of my attending physician, I am unable to make this decision myself and my agent consents to make the decision on my behalf." It is undisputed that a physician never determined that the Decedent was incompetent or otherwise unable to make healthcare decisions for herself, and, consequently, the parties agree that the healthcare power of attorney never became effective.

Mrs. Sanders was discharged from Camden Care Center in May of 2014, and she relocated to Memphis, Tennessee on June 1, 2014, to be closer to Mrs. Minter. Upon her arrival in Memphis, Mrs. Sanders experienced chest pain and was admitted to St. Francis Hospital. On June 6, 2014, in order to facilitate further care for Mrs. Sanders after her discharge from St. Francis Hospital, she was admitted to Harbor View Nursing and Rehabilitation Center ("Harbor View"). As

---

[1] The copy of this healthcare power of attorney contained in the record is dated April 24, 2003. All parties assert that this document was executed on April 24, 2012, the same day as the power of attorney. Because the parties agree that the document was signed in 2012 and because it is immaterial to the issue on appeal, we accept as true that the healthcare power of attorney was signed in 2012.

part of Mrs. Sanders's admission to Harbor View, the Appellee signed an admission contract and a separate, voluntary arbitration agreement. The arbitration agreement states that Harbor View and its patients will "submit their disputes to mediation and arbitration" and also states, in relevant part, that:

> PATIENT and FACILITY agree that this Agreement is entered into on a voluntary basis. The PATIENT understands they have a choice of long-term care providers and that other nursing facilities may or may not use arbitration and/or mediation to resolve disputes. By signing below, the PATIENT agrees that the FACILITY is not requiring them to sign this Agreement and understands that they may be admitted to the FACILITY without entering into this Agreement. PATIENT and FACILITY also agree that PATIENT'S decision to enter into this Agreement is within the scope of a "health care decision" under Tennessee law.

The arbitration agreement also states that "PATIENT'S signing this Agreement (agreeing to submit disputes to [arbitration]) is not a condition of admission to the FACILITY; and the decision to sign this Agreement is solely within the discretion of PATIENT." Mrs. Sanders remained at Harbor View until August 19, 2012, when she was discharged.

On September 5, 2013, the Appellee, in the posture of the Decedent's "next friend," filed suit against Harbor View, Tennessee Health Management, Inc. ("THM"), and American Health Companies Inc., ("AHC") (collectively, "Appellants"). THM is the managing company of Harbor View, and AHC is the sole shareholder of THM.[2] The complaint asserts claims for ordinary negligence, violations of the Tennessee Adult Protection Act,[3] medical malpractice, and "reckless, malicious and/or intentional conduct." The complaint alleges that Mrs. Sanders suffered multiple injuries while in the care of Harbor View, which injuries caused her death.

On October 1, 2013, Harbor View and THM filed motions to compel arbitration. Harbor View filed a supplemental motion to compel arbitration on February 6, 2014. On March 17, 2014, AHC filed a motion to compel arbitration. Following her mother's death, Appellee filed a motion to substitute herself as the plaintiff in the case on May 8, 2014. In an order dated June 24, 2014, the trial court denied the Appellants' motion to compel arbitration, holding that the Decedent's healthcare power of attorney was ineffective and that the power of

---

[2] The claims against AHC are based upon theories of alter ego, agency and joint enterprise. For purposes of this appeal, we need not determine whether AHC is liable for the actions of Harbor View and THM.

[3] *See* Tenn. Code Ann. § 76-6-101 *et seq.*

attorney did not grant Appellee the authority to bind the Decedent to the arbitration agreement. In a separate order, also dated June 24, 2014, the trial court granted the Appellee's motion to substitute herself as the plaintiff. The Appellants timely appealed the denial of their motions to compel arbitration pursuant to Tennessee Code Annotated Section 29-5-319.[4]

## II. Issue

The sole issue raised on this appeal is whether the Appellee had the authority under the power of attorney to bind the Decedent to the arbitration agreement.

## III. Standard of Review

We review a denial of a motion to compel arbitration under the same standards as a bench trial. ***Mitchell v. Kindred Healthcare Operating, Inc.***, 349 S.W.3d 492, 496 (Tenn. Ct. App. 2008) (citing ***Spann v. Am. Express Travel Related Servs. Co.***, 224 S.W.3d 698, 706-707 (Tenn. Ct. App. 2006)). Accordingly, we review the trial court's conclusions of law *de novo*. ***Id.*** We review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

## IV. Analysis

This case requires us to determine whether the Appellee was authorized to bind the Decedent to arbitration. All parties agree that the healthcare power of attorney was not effective at the time the Decedent was admitted to Harbor View because no physician ever declared Mrs. Sanders unable to make decisions on her own behalf. Neither party challenges this holding on appeal. Therefore, we need only determine whether the Appellee had the authority under the power of attorney to bind the Decedent to a voluntary arbitration agreement.

"A power of attorney is a written instrument that creates a principal-agent relationship." ***Mitchell***, 349 S.W.3d at 496. "The instrument itself indicates the purpose of the agency and the extent of the agent's powers." ***Id.*** "[T]he language of a power of attorney determines the extent of the power that the power of attorney conveys, and the language should be construed using the same rules of construction generally applicable to contracts and other written instruments." ***Cabany v. Mayfield Rehabilitation and Special Care Center***, No. M2006-00594-COA-R3-CV, 2007 WL 3445550, at *4 (Tenn. Ct. App. Nov. 15, 2007) (citing ***Tenn. Farmers Life Reassurance Co. v. Rose et al.***, 239 S.W.3d 743 (Tenn. 2007)). "[P]owers of attorney should be interpreted according to their plain

---

[4] Tennessee Code Annotated Section 29-5-319(a)(1) provides that an appeal may be taken from "[a]n order denying an application to compel arbitration made under § 29-5-303."

4

terms." ***Tenn. Farmers Life Reassurance Co.***, 239 S.W.3d at 750. "However, when the meaning of a power of attorney is unclear or ambiguous, the intention of the principal, at the time of the execution of the power of attorney, should be given effect." ***Id.***

Appellants argue that the decision to sign a voluntary arbitration agreement is within the scope of the powers granted to the Appellee by the power of attorney because such an action is a legal decision, not a healthcare decision. Appellants also argue that the power of attorney gives Appellee the authority to bind the Decedent to arbitration because the Appellee has power over "claims and litigation" on the Decedent's behalf. Appellee, on the other hand, argues that signing the arbitration agreement was part of the healthcare decision to admit the Decedent to Harbor View, and, therefore, was beyond the authority granted her by the power of attorney executed by Mrs. Sanders.

When executing the power of attorney, the Decedent indicated that the Appellee was to "act for me in any way that I could act with respect to the following matters, as each of them is defined in Minnesota Statutes section 234.24." The Decedent indicated that the Appellee was to have all of the powers enumerated that can be granted under Minnesota Statutes Annotated Section 524.23,[5] including claims and litigation.

Although Mrs. Sanders' power of attorney does not follow the language provided in the statute verbatim, we note that the statutory form for a power of attorney provides that, in granting all of the powers possible under that statute, that an attorney-in-fact may act on behalf of the principal in the enumerated ways, as well as "all other matters, *other than health care decisions under a health care directive that complies with Minnesota Statutes, chapter 145C.*" ***Id.*** § 523.23, subd. 1 (emphasis added). Minnesota Statutes Annotated Section 523.24, the statute providing the construction of the terms in the power of attorney, provides that, even when the power of attorney grants authority in all of the enumerated categories and "all other matters," "[t]he language conferring general authority does not include any powers to make health care decisions for the principal." ***Id.*** § 523.24, subd. 14. Despite the sweeping authority granted by the power of attorney, the statutes explaining the scope of the power of attorney explicitly state that the document does not grant authority regarding healthcare decisions. Accordingly, if signing the arbitration agreement constituted a healthcare decision, the Appellee

---

[5] These enumerated powers include authority pertaining to real property transactions; bond, share and commodity transactions; banking transactions; business operating transactions; insurance transactions; beneficiary transactions; gift transactions; fiduciary transactions; claims and litigation; family maintenance; benefits from military service; and records, reports, and statements.

did not have the authority under the power of attorney to bind the Decedent to arbitration.

Moreover, the arbitration agreement here explicitly states that the parties "agree that PATIENT'S decision to enter into this Agreement is within the scope of a 'health care decision' under Tennessee law." Appellants have argued that their characterization of the signing of the arbitration agreement as a healthcare decision is erroneous and should be considered a legal decision. We note, however, that "parties are free to structure an arbitration agreement as they see fit." *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975). "In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). The plain terms of the arbitration agreement here clearly show that the parties intended the execution of the arbitration agreement to constitute a healthcare decision. Because the decision to execute the arbitration agreement is a healthcare decision as defined in the parties agreement, and, as discussed previously, because the Appellee did not have the authority to make healthcare decisions for the Decedent, we conclude that the Appellee did not have the authority to bind the Decedent to arbitration. We, therefore, affirm the judgment of the trial court denying the Appellants' motions to compel arbitration.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed against the Appellants, Harbor View Nursing and Rehabilitation Center, Inc., Tennessee Health Management, Inc., and American Health Companies Inc., and their sureties, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

6