# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 8, 2023 Session

## DARLENE HALL v. QUALITY CENTER FOR REHABILITATION AND HEALING, LLC

**Appeal from the Circuit Court for Wilson County**
**No. 2020-CV-26     Michael Wayne Collins, Judge**

———————————————————

### No. M2022-01028-COA-R3-CV

———————————————————

This is an appeal from an order denying a nursing home's motion to compel arbitration and stay proceedings in a wrongful death action commenced by a former resident's wife. The nursing home argued that the wife was bound by an optional arbitration agreement that she signed during her husband's admission to the facility. However, the trial court held that the wife was not bound by the arbitration agreement because she signed it in a representative capacity and was not a party to the agreement. This appeal followed. Following the recent Tennessee Supreme Court decision in *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718 (Tenn. 2024), we hold that the wife lacked the legal authority to bind her husband to the optional arbitration agreement because she had the powers of only a healthcare agent, and entering into the optional arbitration agreement was not a healthcare decision. Thus, neither the wife nor any of the resident's heirs are precluded from bringing and maintaining a wrongful death action on the resident's behalf. For the reasons explained below, we affirm the judgment of the trial court, albeit on different grounds, and remand for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

Whitney Goode Horak, Minton Philip Mayer, Memphis, Tennessee, for the appellant, Quality Center for Rehabilitation and Healing, LLC.

Sarah Lynne Martin, Benjamin James Miller, Richard D. Piliponis, Nashville, Tennessee, for the appellee, Darlene Hall, as surviving spouse and on behalf of the wrongful death beneficiaries of Austin Hall, deceased.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In July 2015, Gary Hall ("Mr. Hall") executed an appointment of healthcare agent form that appointed his wife, Darlene Hall ("Mrs. Hall"), to serve as his healthcare agent. The form executed by Mr. Hall stated: "I, Gary Austin Hall, give my agent named below permission to make **health care decisions** for me if I cannot make decisions for myself, including any health care decision that I could have made for myself, if able." (Emphasis added).

Then, in September 2018, Mr. Hall—who had Parkinson's disease—was admitted to a nursing home ("the Facility") operated by Quality Center for Rehabilitation and Healing, LLC ("Quality Center"). On the day of Mr. Hall's admission, Mrs. Hall signed two agreements on his behalf: an admission agreement ("the Admission Agreement") and an optional[1] alternative dispute resolution agreement ("the ADR Agreement") that was incorporated under the terms of the Admission Agreement.

The optional ADR Agreement required residents of the Facility to arbitrate "**any and all claims or controversies arising out of or in any way relating to . . . the Resident's stay at the Facility . . . whether existing or arising in the future**." (emphasis added). The ADR Agreement defined the term "Resident" to include, "the resident, his or her Guardian, or attorney in fact, his or her agents or any person whose claim is derived through or on behalf of the resident."

In February 2019, Mr. Hall was transferred from the Facility to a doctor's office for wound care. From there, he was taken to a hospital for treatment of a suspected bone infection. Upon his hospitalization, Quality Center was notified that Mr. Hall would not be returning. Mr. Hall died while in the hospital.

In January 2020, Mrs. Hall commenced this wrongful death action in her capacity as Mr. Hall's surviving spouse and on behalf of Mr. Hall's wrongful death beneficiaries against Quality Center in the Circuit Court of Wilson County, Tennessee. In her complaint, Mrs. Hall alleged that Quality Center breached its duty of care to Mr. Hall by failing to develop and implement an effective treatment plan or to discharge him to an appropriate facility where his needs could be met. Mrs. Hall alleged that, as a result of Quality Center's failures, Mr. Hall suffered pressure injuries, infections, and worsening epilepsy, which ultimately cost him his life.

---

[1] The ADR Agreement states at the top of the first page, in bold and capitalized letters, as follows: **"THIS AGREEMENT IS OPTIONAL FOR RESIDENTS AND FACILITY. ADMISSION TO THE FACILITY IS NOT CONDITIONAL UPON A RESIDENT'S WILLINGNESS TO ENTER INTO THIS AGREEMENT."**

In March 2020, Quality Center moved to enforce the ADR Agreement, stay court proceedings, and compel Mrs. Hall to arbitrate her wrongful death claim. Quality Center maintained that the ADR Agreement applied to any dispute arising out of Mr. Hall's stay at the Facility, and Mrs. Hall's claims related to "the alleged negligence of Quality Center and/or its employees with respect to the care and treatment of Mr. Hall while he was a resident." Quality Center argued that, because Mr. Hall's right of action passed to Mrs. Hall, the procedural defenses that would apply to Mr. Hall's claim applied to Mrs. Hall's claim.

Mrs. Hall opposed Quality Center's motion on multiple grounds. She argued, *inter alia*, that she was not bound by the ADR Agreement's terms because she signed the agreement in her capacity as a "Legal Representative of Gary Hall" and not in her "individual" capacity.

In its order entered on September 12, 2022, the trial court denied the motion to compel arbitration of Mrs. Hall's claims. The trial court found that

> 2. Plaintiff was not a party to the arbitration agreement and did not sign the agreement in her individual capacity; rather, she signed the agreement in her representative capacity, as the person authorized to make health care decisions on Mr. Hall's behalf.

Thus, "Because Plaintiff signed the agreement in her capacity as Mr. Hall's representative and not for herself individually," the trial court held that "Plaintiff is not bound by the arbitration agreement in prosecuting this action."

This appeal followed.

## ISSUES

We have determined that the dispositive issue is whether Mrs. Hall had the authority, as Mr. Hall's healthcare agent, to bind him to the optional ADR Agreement.[2]

---

[2] Quality Center raised one issue on appeal: whether the trial court erred in holding the arbitration agreement was not enforceable because the Plaintiff/signatory did not sign in her individual capacity. But Mrs. Hall framed the issue as two: "1. Did the trial court correctly determine that Darlene Hall . . . was not a party to the [ADR] Agreement and therefore was not bound by it in bringing this action?" and, in the alternative, "2. Did the ADR Agreement terminate upon Gary Hall's permanent removal from the Defendant facility?"

During oral arguments, the parties and this court recognized that the Supreme Court had granted a Tennessee Rule of Appellate Procedure 11 application to consider this court's ruling in *Williams v. Smyrna Residential, LLC*, No. M2021-00927-COA-R3-CV, 2022 WL 1052429 (Tenn. Ct. App. Apr. 8, 2022).

STANDARD OF REVIEW

In this case, the facts underlying the execution of the arbitration agreement are undisputed by the parties. When facts are not disputed, this court's standard of review of a trial court's denial of a motion to compel arbitration is de novo, with no presumption of correctness of the trial court's decision. *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 807 (Tenn. Ct. App. 2015) (citation omitted).

Likewise, the interpretation of a power of attorney is a question of law, which we review de novo. *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 750 (Tenn. 2007) (citations omitted).

## ANALYSIS

As stated above, the dispositive issue in this case is whether Mrs. Hall had the authority, as Mr. Hall's healthcare agent, to bind Mr. Hall to the optional ADR Agreement. The answer, which is found in the Supreme Court's recent decision in *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718 (Tenn. 2024), is that she did not.

As our Supreme Court noted in *Williams*:

> In general, "[t]he language of a power of attorney determines the extent of the authority conveyed." We interpret a power of attorney "according to [its] plain terms" and "us[e] the same rules of construction generally applicable to contracts and other written instruments." A power of attorney should be given "neither a 'strict' nor a 'liberal' interpretation . . . but rather a fair construction that carries out the author's intent as expressed in the instrument."

*Id.* at 724 (citations omitted) (quoting *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 750 (Tenn. 2007)).[3] In addition, we "must consider any relevant governing

---

Realizing that the impending Supreme Court decision in *Williams* would likely have a significant impact on this court's decision in the present case, we awaited the release of that decision, which was filed and released on February 16, 2024. *See Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718 (Tenn. 2024). Following the release of the Supreme Court's decision in *Williams*, this court ordered that both parties file supplemental briefs and brief the issues in light of the Court's holding in *Williams*. The last supplement brief was filed on April 11, 2024, giving rise to this decision.

In her supplemental brief, Mrs. Hall restated her first issue as simply whether she had the authority to bind Mr. Hall to the ADR Agreement.

[3] This applies equally to health care agent instruments, such as the one at issue in this case. *See Bockelman v. GGNSC Gallatin Brandywood LLC*, No. M2014-02371-COA-R3-CV, 2015 WL 5564885, at *4 (Tenn. Ct. App. Sept. 18, 2015).

statutes and interpret the power of attorney consistently with those laws," *id.*, which in this case includes the Durable Power of Attorney for Health Care Act.

In *Williams*, the Supreme Court held that signing "an arbitration agreement that is not a condition of admission" to a healthcare facility is not a "health care decision" within the meaning of the Durable Power of Attorney for Health Care Act. *Id.* at 734. The Court noted that the Act defines a "health care decision" as one involving "consent, refusal of consent or withdrawal of consent to health care." *Id.* (quoting Tenn. Code Ann. § 34-6-201(3)). The Court found that the optional arbitration agreement at issue in *Williams* did not constitute "consent to health care;" thus, it was not a "health care decision" under the Act, because the agreement "was not a condition of [the father's] admission to the facility or otherwise required for [the father] to obtain health care." *Id.* at 726–27.

Turning to the present case, there is no dispute that Mrs. Hall had the authority to make health care decisions on Mr. Hall's behalf. As noted earlier, the appointment of healthcare agent form executed by Mr. Hall states: "I, Gary Austin Hall, give my agent named below permission to make **health care decisions** for me if I cannot make decisions for myself, including any health care decision that I could have made for myself, if able." (Emphasis added). Mr. Hall then listed Mrs. Hall as his designated health care agent. However, and importantly, there is no evidence that Mrs. Hall was granted any type of legal authority outside of the power to make healthcare decisions.

Further, as previously mentioned, it is undisputed that the ADR Agreement was optional and that it was not required as a condition of admission to the Facility. Stated another way, Quality Center would have admitted Mr. Hall to the Facility even if Mrs. Hall had not signed the ADR Agreement. Thus, under the rationale set forth in *Williams*, Mrs. Hall was not making a "health care decision" when she executed the ADR Agreement because doing so was not necessary for "consent to health care." *See id.*

Because the plain terms of the appointment of health care agent limited Mrs. Hall's power to act on behalf of her husband to "health care decisions," Mrs. Hall lacked the authority to bind Mr. Hall to the optional ADR Agreement, and the ADR Agreement was never validly executed. Stated another way, because Mr. Hall was not bound by the ADR Agreement, neither Mrs. Hall nor Mr. Hall's other heirs at law are precluded from pursuing wrongful death claims on his behalf. *See generally id.* at 734–37 (discussing derivative

nature of wrongful death claims).[4] Therefore, we affirm the trial court's decision to deny the motion to compel arbitration, albeit on different grounds.[5]

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Quality Center for Rehabilitation and Healing, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.

_____

[4] We acknowledge that the trial court implicitly found that the ADR Agreement was enforceable against Mr. Hall on the basis that Mrs. Hall had the authority to bind him to the ADR Agreement as his healthcare agent. Nevertheless, the court expressly found that Mrs. Hall "was not a party to the arbitration agreement and did not sign the agreement in her individual capacity." For this reason, the trial court found that Mrs. Hall "is not bound by the arbitration agreement in prosecuting this [wrongful death] action." For purposes of completeness, we note that the Supreme Court's decision in *Williams* would compel a conclusion different from that reached by the trial court had the ADR Agreement been enforceable against Mr. Hall.

As our Supreme Court explained in *Williams*, Tennessee's wrongful death statute resembles a survival statute, *see* 685 S.W.3d at 733, and it states as follows:

> The right of action that a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not been ensued, shall not abate or be extinguished by the person's death but **shall pass to the person's surviving spouse**.

Tenn. Code Ann. § 20-5-106(a) (emphasis added). Significantly, Tennessee Code Annotated § 20-5-106 "does not merely authorize the surviving spouse to file the wrongful death action on behalf of the decedent; it 'passes' or transfers the right of action to the spouse." *Beard v. Branson*, 528 S.W.3d 487, 502 (Tenn. 2017). Thus, the wrongful death claims of a surviving spouse or beneficiary are derivative of the claims belonging to the decedent and are "subject to the same limitations as those claims." *Williams*, 685 S.W.3d at 734 (citations omitted).

Here, any right of action that Mr. Hall had against Quality Center during his lifetime "passed" to Mrs. Hall and his heirs upon his death. Thus, their claims are derivative of Mr. Hall's claims and are subject to the same limitations. Based on the authority in *Williams*, if we had found that Mrs. Hall had the authority to enter into the ADR Agreement on behalf of Mr. Hall, our conclusion would differ from that of the trial court in that we would have to rule that Mrs. Hall and the other heirs are subject to the limitations in the ADR Agreement.

[5] "The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 (Tenn. Ct. App. 2004) (citing *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986) (other citations omitted).

- 6 -