COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS




TERRY L. ARMSTRONG AND
RONALD KEMP,

                            Appellants,

v.


J.C.ROBERTS, DECEASED AND
PARTIES IN INTEREST, MARY LOU
GARRISON, RICHARD G. GARRISON,
AND PAMELA BUCKLEY,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00164-CV

Appeal from the

109th District Court

of Andrews County, Texas 

(TC# 16,563) 





O P I N I O N
            Terry L. Armstrong and Ronald Kemp (collectively Armstrong) appeal a declaratory
judgment in favor of their aunt, Mary Lou Garrison. We affirm in part and reverse in part.
FACTUAL SUMMARY
            This controversy surrounds the death of John C. Roberts on February 3, 2003. Roberts
fathered two daughters, Mary Lou Garrison and Mamie Jo Kemp. In 1994, Roberts granted Mary
Lou a power of attorney. Based on that authority, Mary Lou purchased three certificates of deposit
and designated the payees on death for each: (1) a $60,000 certificate of deposit payable on death
to Mary L. Garrison and Pamela Buckley; (2) a $100,362.33 certificate of deposit payable on death
to Mary Lou Garrison and Maime Jo Kemp; and (3) a $100,000 certificate of deposit payable on
death to Mary L. Garrison. Mamie Jo died in 2002 and was survived by two children, Terry L.
Armstrong and Ronald Kemp. Mary Lou Garrison has one daughter, Pamela Buckley.
            Pursuant to Roberts’ Last Will and Testament, all property owned by him passed to Maime
Jo and Mary Lou.


 At the time of Roberts’ death, his estate included the three certificates of deposit
and one checking account containing $20,159.17. The will was admitted to probate on May 12,
2004. Some three weeks later, Mary Lou filed a declaratory judgment action seeking to establish that
while Armstrong and Kemp were entitled to their respective one-fourth shares of Roberts’ estate, the
bank account and certificates of deposit passed to her because of her right of survivorship. The
declaratory judgment was granted on April 1, 2005.
CERTIFICATES OF DEPOSIT
            In multiple issues for review, Armstrong challenges the trial court’s findings of fact and
conclusions of law that the power of attorney authorized Mary Lou to purchase the certificates of
deposit; that the CDs were valid pay on death accounts; and that Mary Lou met her burden of
establishing the fairness of the transactions which arose from a fiduciary relationship.
Standard of Review
            A trial court’s fact findings have the same force and dignity as a jury’s verdict. Bernal v.
Chavez, 198 S.W.3d 15, 18 (Tex.App.--El Paso 2006, no pet.). We review a trial court’s findings
of fact under the same legal sufficiency standard used to support a jury’s verdict. Id.; Wil-Roye Inv. 
Co. II v. Washington Mut. Bank, FA, 142 S.W.3d 393, 407 (Tex.App.--El Paso 2004, no pet.). In
considering a “no evidence” legal sufficiency challenge, we consider only the evidence and
inferences that tend to support the findings and disregard all evidence inferences to the contrary. 
Bernal, 198 S.W.3d at 18. A trial court’s findings will be upheld if more than a scintilla of evidence
supports the factual finding. I & JC Corp. v. Helen of Troy L.P., 164 S.W.3d 877, 884 (Tex.App.--El Paso 2005, pet. denied). We review a trial court’s conclusions of law as a question of law. Id. 
at 883. If the conclusion of law is erroneous, but the trial court rendered the proper judgment, then
the erroneous conclusion of law does not require a reversal. Id. at 883.
The Power of Attorney
            The language of a power of attorney determines the extent of authority conveyed. First Nat’l
Bank in Dallas v. Kinabrew, 589 S.W.2d 137, 145 (Tex.Civ.App.--Tyler 1979, writ ref’d n.r.e.). 
We construe the document as a whole in order to ascertain the parties’ intentions and rights. Id. 
In interpreting the limits of authority, we abide by two rules of construction. First, the meaning of
the general words in the instrument will be restricted by the context and construed accordingly. 
Second, the authority will be construed strictly so as to exclude the exercise of any power which is
not warranted either by the actual terms used, or as a necessary means of executing the authority with
effect. Gouldy v. Metcalf, 75 Tex. 455, 458, 12 S.W. 830, 831 (1889).
            The document at issue provides:
JOHN C. ROBERTS of the County of Andrews and State of Texas has this day
Made, Constituted and Appointed and by these presents do Make, Constitute and
Appoint MARY L. ROBERTS GARRISON of Andrews, in the County of Andrews
and State of Texas true and lawful Attorney for and in my name, place and stead, to
do any and every act and exercise any and every power that I might or could do or
exercise through any other person and that they shall deem proper or advisable,
intending hereby to vest in them a full and universal power of attorney giving and
granting unto my said attorneys full power and authority
 
hereby giving and granting to said Attorney full power and authority to do and
perform any and all acts and things whatsoever requisite and necessary to be done in
and about the premises, as fully and to all intents and purposes, as I might or could
do if personally present, with full power of substitution and revocation, hereby
ratifying and confirming all that said Attorney or substitute shall lawfully do in the
premises by virtue thereof.
 
IN TESTIMONY WHEREOF, I have hereunto set my hand at Andrews County,
Texas this 23rd day of Andrews


 [sic], A.D. 1994.
Roberts placed no restrictions upon the actions Mary Lou could take. Where an instrument is free
from qualifying features either on its face or from the evidence, the agent has unlimited power to act
in complete substitution for any act which the principal might himself do if present and acting. 
Veatch v. Gilmer, 111 S.W. 746, 747 (Tex. 1908). Since Roberts granted Mary Lou broad powers,
she properly created the certificates of deposit. We conclude, however, that she lacked the authority
to designate the payees on death.
Designation of Payees on Death
            All three certificates of deposit are governed by Probate Code Section 439(b):
If the account is a P.O.D. account and there is a written agreement signed by the
original payee or payees, on the death of the original payee or on the death of the
survivor of two or more original payees, any sums remaining on deposit belong to the
P.O.D. payee or payees if surviving, or to the survivor of them if one or more P.O.D.
payees die before the original payee. If two or more P.O.D. payees survive, there is
no right of survivorship in event of death of a P.O.D. payee thereafter unless the
terms of the account or deposit agreement expressly provide for survivorship between
them.

Tex.Prob.Code Ann. § 439(b)(Vernon 2003) (emphasis added). Armstrong claims that based on
this language, Mary Lou was prohibited from designating payees on death because only Roberts, the
original payee, could make such designation.
            Our primary objective in statutory construction is to determine the Legislature’s intent and
give it effect. McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). We must interpret the statute
according to its plain meaning. Id. We must read the statute as a whole and not in isolated portions. 
City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). We read every word, phrase,
and expression as if it were deliberately chosen, and we presume the words excluded from the statute
are done so purposefully. Gables Realty Ltd. P’ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869,
873 (Tex.App.--Austin 2002, pet. denied).
            The Legislature amended Section 439 in 1993. The amendment, which became effective
roughly one year before the power of attorney was executed,


 included the italicized phrase we have
highlighted above and requires that the written agreement be “signed by the original payee or
payees.” Although the broad power of attorney granted Mary Lou the authority to establish the
certificates of deposit for her father, the Legislature limited her authority to designate his payees on
death. Only the original payee, Roberts himself, was authorized to designate payees on death. See
Parker v. JPMorgan Chase Bank, 95 S.W.3d 428, 429-32 (Tex.App.--Houston [1st Dist.] 2002, no
pet.) (non-movant in summary judgment proceeding failed to establish fact issue that payable on
death account was created where decedent opened two accounts, receipts indicated accounts were
P.O.D., beneficiary was designated, but account receipt was not signed by the decedent). We sustain
Issue One. Our resolution of this issue negates the necessity of our consideration of Issue Two,
Issues Four through Thirteen, and Issue Fifteen.
JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP
            In Issues Three and Fourteen, Armstrong complains of the trial court’s determination that the
checking account constituted a joint account with right of survivorship. The Probate Code provides:
Sums remaining on deposit at the death of a party to a joint account belong to the
surviving party or parties against the estate of the decedent if, by a written agreement
signed by the party who dies, the interest of such deceased party is made to survive
to the surviving party or parties. Notwithstanding any other law, an agreement is
sufficient to confer an absolute right of survivorship on parties to a joint account
under this subsection if the agreement states in substantially the following form: ‘On
the death of one party to a joint account, all sums in the account on the date of the
death vest in and belong to the surviving party as his or her separate property and
estate.’ A survivorship agreement will not be inferred from the mere fact that the
account is a joint account. If there are two or more surviving parties, their respective
ownerships during lifetime shall be in proportion to their previous ownership
interests under Section 438 of this code augmented by an equal share for each
survivor of any interest the decedent may have owned in the account immediately
before his death, and the right of survivorship continues between the surviving
parties if a written agreement signed by a party who dies so provides. 
 
Tex.Prob.Code Ann. § 439(a)(Vernon 2003). Thus, a joint account with right of survivorship
requires (1) a written agreement, (2) signed by the party who dies, (3) which specifies that the
interest of the deceased passes to the surviving party. Shaw v. Shaw, 835 S.W.2d 232, 234
(Tex.App.--Waco 1992, writ denied).
            In 1991, Roberts opened a joint bank account with his wife Julia and Mary Lou. Mary Lou’s
husband was added to the account in 2003. The record contains a copy of the front side of the bank’s
signature card reflecting the signatures of Roberts, Julia, Mary Lou, and her husband. Originally a
money market account, it was changed to a NOW account by Mary Lou in 1998. The signature card
reads, “Ownership: Joint w suv.” Armstrong contends this language is insufficient to establish rights
of survivorship because the bank card does not contain the “safe harbor” language from Section
439(a) or its substantial equivalent: “On the death of one party, to a joint account, all sums in the
account on the date of death vest in and belong to the surviving party as his or her separate property
and estate.”
            Section 439(a) requires a written agreement in order for an account to create rights of
survivorship. Stauffer v. Henderson, 801 S.W.2d 858, 863 (Tex. 1990). If the agreement is
unambiguous and complete, parol evidence is inadmissible to establish the intent of the parties. Id.
at 863-64. If the agreement merely states an account is a “Joint Account with Right of Survivorship”
that language alone does not substantially comply with Section 439(a) and is insufficient to establish
rights of survivorship. Ivey v. Steele, 857 S.W.2d 749, 751 (Tex.App.--Houston [14th Dist.] 1993, 
no writ); Shaw, 835 S.W.2d at 235. We agree with Armstrong that “Joint w suv” is insufficient.
            Mary Lou counters that the back of the signature card meets the requirements of Section
439(a). The front of the signature card does contain this recitation:
‘SIGNATURES THE UNDERSIGNED AGREE(S) TO THE TERMS STATED ON
THE FRONT AND BACK OF THIS FORM, THE FEE SCHEDULE, FUNDS
AVAILABILITY DISCLOSURE, AND ACKNOWLEDGE(S) RECEIPT OF A
COPY OF EACH ON TODAY’S DATE.’
We reiterate that only a copy of the front of the card was admitted. Nevertheless, Deborah
Rulestead, a senior vice-president of the bank, testified as to the contents of the back of the signature
card.
Q: Now, we don’t have the second page to this, we don’t have it, but is there a back
to this or a second page of this that explains the different types of accounts, the
survivorship would be different types of accounts of whether or not the P.O.D.’s or
otherwise?
 
A: Yes, sir, on the second page.
 
Q: Okay. And even though we don’t have that itself, the original would contain that
information, is that correct?
 
A: Yes, sir.
. . .
 
Q: What does a joint account with survivorship mean to you? How do you--what
does the Bank do when it has an account like that?
 
A: If it’s a joint account with survivorship, it’s an account that’s owned by more than
one person. If one of the person’s [sic] dies then all the money in that account goes
to the living person who remains on the account.
 
Q: If it’s a multiple account, does it--who does it go too?
 
A: It goes to the other sibling.
 
Q: It goes to the last surviving, the survivor of the account?
 
A: Yes, sir.
 
Q: Is that correct?
 
A: Yes, sir.
 
Q: And that’s explained on the back, is that correct?
 
A: Yes, sir.

Armstrong objected and the following transpired:
[Armstrong’s Counsel]: Your Honor, again, we’re going to object to that, that-
 
The Court: Well, what does it matter. Maybe somebody can explain to me what
does it matter whether it is explained on the back.
 
[Mary Lou’s Counsel]: I can explain, what counsel is trying to do. Counsel is trying
to use a technicality of the law in order to keep these people from having what they
contracted for when they opened this Bank account. He said that because we don’t
have the second page to it that explains the account, that the survivorship doesn’t
comply with Rule 439. That’s all they’re trying to do--
 
The Court: Well, the nature of the account is the nature of the account, whether or
not, I mean the account is what it is.
 
[Armstrong’s Counsel]: As demonstrated in this courtroom today without any
attachment of something that I have not even seen, Your Honor.
 
[Mary Lou’s Counsel]: Well, there’s no law that I understand that if I had an
agreement with you or with Counsel not to introduce any instruments I still can get
testimony from witnesses about what’s on the back. I mean that shouldn’t limit me
from testimonial evidence as opposed to documentary evidence.
            The Court: Go ahead. Overruled.

            Because Armstrong has not properly challenged the evidentiary ruling, we will consider
Rulestead’s testimony in our analysis.


 She testified that the nature of a joint account with
survivorship rights was explained on the back of the signature card as an account owned by more
than one individual and that upon an individual’s death, all the money in the account passes to the
survivor(s). The record thus reveals that the signature card contains language substantially similar
to Section 439(a) and fulfills the statutory requirements. McNeme v. Estate of Hart, 860 S.W.2d
536, 539 (Tex.App.--El Paso 1993, no writ) (language in the account expressing that sums shall be
owned jointly with rights of survivorship established ownership of the funds in the survivor); Ivey,
857 S.W.2d at 751 (signature card signed by decedent which specified that upon the death of one of
the parties the account was owned by the survivor was sufficient to create a right of survivorship);
Shaw, 835 S.W.2d at 235 (the example given by Section 439(a) need not be followed exactly, but
must be “substantially” followed to create a joint account with rights of survivorship). We overrule
Issues Three and Fourteen.CONCLUSION
            We affirm the judgment of the trial court with regard to the checking account. Having found
error with regard to the certificates of deposit, we reverse and render judgment that these funds be 
distributed according to Roberts’ will.
                                                                        ANN CRAWFORD McCLURE, Justice

December 7, 2006

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating