FILED

05/23/2024

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 6, 2024

## RICHARD A. PETERSEN v. MARGARET E. GEORGIADES, ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2021-CV-15     Joe H. Thompson, Judge[1]**
_____

### No. M2023-00538-COA-R3-CV
_____

This is an action to rescind a quitclaim deed conveyed pursuant to a durable general power of attorney. On August 1, 2006, Richard Petersen ("Plaintiff") appointed his sister, Margaret Georgiades ("Defendant") as his attorney-in-fact. The power of attorney was recorded on July 8, 2009. In April 2010, Defendant conveyed, via quitclaim deed, one-half of Plaintiff's undivided interest in his residence to herself for no consideration. Plaintiff contends that he did not discover the transfer until the fall of 2020, at which time he revoked Defendant's power of attorney. Then, on February 4, 2021, he filed suit against Defendant to rescind the conveyance on the basis that the deed was void ab initio as the power of attorney did not authorize Defendant to make gifts or transfers "without consideration to anyone."  He also contended that the conveyance should be set aside because Defendant's conduct "constitutes a clear breach of the fiduciary duty" she owed to Plaintiff as his attorney-in-fact. For her part, Defendant contends that the action is barred by the ten-year statute of limitations. She also contends that Plaintiff instructed her to make the conveyance and that he subsequently told others that he had consented to the conveyance. Following discovery, Plaintiff filed a motion for summary judgment on the basis that the deed was void ab initio. The trial court granted the motion, finding that the power of attorney did not grant Defendant "the authority to transfer [Plaintiff's] property by gift to her or to any third party" and, on this basis, declared the deed "void ab initio and to have no effect whatsoever." This appeal followed. As provided by Tennessee Code Annotated § 34-6-110(a), because the power of attorney expressly authorized Defendant "[t]o exercise or perform any act, power, duty, right or obligation whatsoever that I now have," Defendant had "the power and authority to make gifts, in any amount, of any of the principal's property, to any individuals, . . . in accordance with the principal's personal history of making or joining in the making of lifetime gifts." *See* Tenn. Code Ann. § 34-6-110(a). Accordingly, we vacate the trial court's grant of summary judgment. Because the trial court did not rule on other issues, including, inter alia, whether Plaintiff's claim is time barred, whether Plaintiff approved of the conveyance, whether the gift was in accordance with

---

[1] Sitting by Interchange.

Plaintiff's history of making lifetime gifts, and/or whether the conveyance constitutes a breach of Defendant's fiduciary duty to Plaintiff, we remand this case for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Philip C. Kelly, Gallatin, Tennessee, for the appellant, Margaret E. Georgiades.

Shelby Dodson and David Kozlowski, Gallatin, Tennessee, for the appellee, Richard A. Petersen.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On August 1, 2006, Plaintiff executed a power of attorney, which states, in pertinent part:

KNOW ALL MEN BY THESE PRESENTS, that I, RICHARD ALAN PETERSEN, the undersigned, of Sumner County, Tennessee, do hereby make, constitute and appoint my sister, MARGARET E. GEORGIADES, as my true and lawful attorney in fact, for me and in my name, and for my use and benefit:

1. To exercise or perform any act, power, duty, right or obligation whatsoever that I now have.

\*　　　\*　　　\*　　　\*

4. To maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens, mortgages and deeds of trust, and hypothecate, and in any way or manner deal with all or any part of the real property whatsoever, tangible or intangible, or any interest therein, that I now own or may hereafter acquire, for me, [o]n my behalf, and in my name, and under such terms and conditions, and under such covenants as said attorney in fact shall deem proper regarding the aforementioned real property;

5. To conduct, engage in, and transact any and all lawful business of whatever nature or kind for me, on my behalf, and in my name regarding the aforementioned real property;

\* \* \* \*

7. This Power of Attorney shall not be affected by the subsequent disability or incapacity of the principal.

WITNESS my hand thereto, this the 1st day of August, 2006.

_____/s/_____
Richard Alan Petersen

At the time Plaintiff executed the power of attorney, he was a resident at Buffalo Valley, an in-patient rehabilitation center, where he was receiving treatment for a long-standing addiction to alcohol. After being discharged from Buffalo Valley, Plaintiff resided at his home on Drakewood Drive in Portland, Tennessee, until 2009.

The power of attorney was duly recorded on July 8, 2009.

In 2009, Plaintiff, who was not married at the time, asked Defendant to help him sell his Drakewood home and purchase a new residence in Sumner County. As Defendant explained in her deposition, "He didn't know how to go about it. So, we helped him purchase that property, my husband and I."

Although Plaintiff was present for the closing, Defendant signed the deed as Plaintiff's attorney-in-fact to sell the Drakewood property for $119,000. The funds from the sale were deposited in Plaintiff's credit union account.[2] Shortly thereafter, in November 2009, Plaintiff purchased a residence and approximately five acres on Fowler Ford Road in Portland, Tennessee, which is the property at issue in this appeal. Plaintiff purchased the Fowler Ford property for $68,000 with the funds he received from the sale of the Drakewood property. Plaintiff has resided at the Fowler Ford property ever since.

As before, although Plaintiff was present for the closing, Defendant, acting in her capacity as Plaintiff's attorney-in-fact, signed all of the closing documents on behalf of Plaintiff to facilitate Plaintiff's purchase of the Fowler Ford property. Defendant also wrote the check from Plaintiff's credit union account to facilitate the purchase of the property.

---

[2] This was a joint account with Defendant, who used the funds to pay Plaintiff's bills and living expenses for him out of this account until the funds were exhausted.

The deed was titled in Plaintiff's name only. Nevertheless, because Defendant had handled Plaintiff's financial affairs for years, the deed stated that tax notices were to be mailed to Defendant's address, and it is undisputed that the tax notices have been delivered to her address ever since. Thereafter, Defendant paid the annual property taxes on the Fowler Ford property, as well as homeowner insurance premiums. When Plaintiff had sufficient funds, Defendant would pay these expenses with Plaintiff's funds. However, when Plaintiff did not have sufficient funds, Defendant paid these expenses with her personal funds. Defendant later explained that she never expected to be reimbursed for the payments she remitted on Plaintiff's behalf.

On April 14, 2010, Defendant executed a quitclaim deed pursuant to which she conveyed the Fowler Ford property to Plaintiff and herself as tenants in common for no consideration. As a result, Defendant owned a one-half undivided interest in the property. The deed was promptly recorded. As stated in her deposition, Defendant conveyed the property at Plaintiff's instruction for his "protection" because, inter alia, he drank a lot, he had no income at the time, and was prone to making bad decisions.

Plaintiff got married on July 11, 2020. Then, on July 27, 2020, following a discussion between Defendant and Plaintiff's wife regarding the wife's expressed desire to own the property, Defendant transferred Plaintiff's remaining one-half interest to her daughter, Amy Georgiades, for no consideration. Thereby divesting Plaintiff of all of his interest in the property.

Plaintiff states that he discovered that the Fowler Ford property was no longer owned by him in the fall of 2020 when he saw a property tax notice that was addressed to Defendant and Amy Georgiades as "Owners." He further states that it was at this time that he discovered the two quitclaim deeds.[3]

On December 2, 2020, with the assistance of counsel, Plaintiff revoked Defendant's appointment as attorney-in-fact, which was duly recorded. Then, via letter from Plaintiff's counsel addressed to Defendant, Plaintiff demanded that Defendant restore ownership of the Fowler Ford property to him. When Defendant refused, Plaintiff filed suit against Defendant and her daughter, Amy Georgiades, in February 2021.

Plaintiff's complaint avers that Defendant transferred the property to herself and to her daughter for "no consideration" and "without the knowledge or consent" of Plaintiff. The power of attorney, warranty deed, quitclaim deeds, and the revocation of the power of attorney were made exhibits to the complaint.

---

[3] Neither Defendant nor her daughter conveyed their interests in the property to another or encumbered the property as collateral for a loan. Further, no third parties have asserted an interest in the property at issue.

The complaint further states, in pertinent part:

6. The Power of Attorney document executed by the Plaintiff does not incorporate the statutory power of attorney authority provisions found at Tenn. Code Ann. § 36-4-109 nor does it expressly authorize or empower the appointed Attorney-in-Fact, Margaret E. Georgiades, to make gifts, grants or other transfers without consideration [of] whether such are to third parties or herself.

As for the requested relief, Plaintiff sought to nullify the quitclaim deeds executed by Defendant, asserted a claim for conversion, and asked to recover his costs and reasonable attorney's fees.

Shortly after the commencement of this action, Amy Georgiades re-conveyed all of her interest in the property to Plaintiff and was voluntarily dismissed from this action. As a consequence, she is not a party to this appeal.[4]

Defendant Margaret Georgiades filed an answer claiming that she was entitled to retain the Fowler Ford property. In her answer, Defendant states that "Plaintiff did have knowledge of the transfer . . . conveying a one-half interest to the Defendant" and that "when the Plaintiff was made aware of the transfer, he did not object and/or consented to said transfer." The answer further states, "Plaintiff's address is shown on the deed as being the owner along with his sister and the deed is presumed to have been mailed to his address." Defendant's answer states repeatedly that she informed her brother of the transfer and that he consented to such transfer. She also claims to have "paid all the real estate taxes and all the insurance to the extent that insurance was required on the property up until the year 2020."

As an affirmative defense, Defendant asserted that "Plaintiff's action against her is barred by the Statute of Limitations as set forth in *Tennessee Code Annotated §23-3-110* because it has been more than 10 years since the transfer and conveyance occurred, and he was notified and informed of the transfer."

Following discovery, Plaintiff filed a motion for summary judgment with a memorandum of law, statement of undisputed material facts, and attached selections from Defendant's depositions. Plaintiff contended that his power of attorney did not incorporate the statutory power of attorney authority provisions found at Tennessee Code Annotated § 36-4-109, nor did it expressly authorize or empower Defendant to make gifts, grants, or

---

[4] As the trial court noted in its final order, the interest of Amy Georgiades in the property "has been undone," meaning that she has re-conveyed all of her interests in the property to Plaintiff. Amy Georgiades did not participate in the trial court proceedings after that re-conveyance and has not made an appearance in this appeal.

other transfers without consideration of whether they are being made to third parties or herself. He also asserted that, when Defendant made the gift to herself, it created a presumption that the transaction is invalid, unless Defendant can demonstrate by clear and convincing evidence that the transaction was fair to Plaintiff.

In Defendant's response to Plaintiff's statement of undisputed facts, she admitted all facts. However, Defendant qualified her responses by stating that the transfer to herself was "with the consent and at the behest [of Plaintiff], [that] the Plaintiff wanted his sister . . . to have a half interest in the property," that he "orally authorized the Defendant to execute [the quitclaim deed]," and that Plaintiff "consented to her doing this for his protection so he would not jeopardize the farm by losing it."

Defendant also relied upon her deposition, in which she stated: "Thomas Boyers [Plaintiff's attorney at the time] wanted me to be over his dealings because [Plaintiff] stayed drunk and did not handle his business. . . . So [attorney Boyers] wanted me to take charge." When asked, "Why was this deed executed and recorded?" Defendant answered, "He asked me to do this. And so, I went ahead and did it."

Regarding where the tax notices were mailed, Defendant was asked:

Q. Where did the county or city send the tax notices? Did you receive them at your house?
A. To me. Yes.
Q. Okay. So, they did not go to [Plaintiff] at the Fowler Ford property?
A. No.
Q. And is that true both before and after the execution of the April 2010 quitclaim deed where you acquired an interest in the property?
A. Yes.

Defendant was also questioned about Plaintiff's consent to the transfer:

Q. Okay. Well what changed between 2009, when he got that property in his name individually, [and] April of 2010 when you executed that quitclaim deed giving yourself half interest?
A. I was taking care of all his business. And he was drinking. And I just felt that I needed to make the decisions.
Q. That sounds an awful lot like you decided to make that transfer on your own.
A. No. He asked me.

\*     \*     \*     \*

- 6 -

Q. There's no written document that anyone knows about signed by [Plaintiff] directing you to make the transfer or agreeing to it in any way; is that right?
A. No.

Defendant also asserted that "[o]ther witnesses confirm that Plaintiff knew he had conveyed an interest in his property to his sister when the transfer was made," and Defendant attached the affidavits of those witnesses to her memorandum. The statement of one witness, Mayolo Ochoa, who has known Plaintiff for twelve years, stated that Plaintiff "told me that he wanted [Defendant's] name to be on the deed . . . , and he acknowledged, approved and acquiesced in [her] name on the deed since around the time that her name was put on the deed." Charles Petersen, Plaintiff's brother, attests to the same. The affidavit of Amy Georgiades similarly states that "Plaintiff acknowledged to me that he knew [Defendant] was on the deed but added that [Defendant] knew I was supposed to have his property when he died." Defendant's memorandum in opposition to Plaintiff's motion for summary judgment further argued that summary judgment was inappropriate because Defendant had "set forth material, disputed facts showing that there is a genuine issue for trial."

After an oral argument on the motion for summary judgment, the trial court took the matter under advisement. In an order entered on March 17, 2023, the court granted Plaintiff's motion. It found that "the power of attorney did not incorporate the provisions found in Tenn. Code Ann. § 34-6-109, nor did it authorize [Defendant] to make gifts, or grants." The court further found that Plaintiff "did not grant [Defendant] the authority to transfer his property by gift – to her or to any third party." For these reasons, the court ruled that "[t]he deed executed by [Defendant] to herself of the Fowler Ford Road property. . . is hereby declared void *ab initio* and to have no effect whatsoever."

This appeal followed.

### ISSUES

Defendant presents two issues for our consideration.[5] We, however, have determined that the dispositive issue in the present case is whether the trial court erred in

---

[5] The issues presented by Defendant read:

1. Can the Court consider the actions of Mr. Petersen in instructing and consenting to his attorney-in-fact putting her name on his deed when Ms. Georgiades acted pursuant to his direction and given the fact that Mr. Petersen had actual knowledge of the transfer, represented to others that the transfer had been made, and knowingly allowed Ms. Georgiades to contribute to the property's maintenance, improvements and payment of property taxes over the course of the next ten years without taking any action to disaffirm the transfer?

holding that the deed was void ab initio[6] because Plaintiff "did not grant [Defendant] the authority to transfer his property by gift – to her or to any third party."

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

When a motion for summary judgment is made and supported as provided in Tennessee Rule of Civil Procedure 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing there is a genuine issue for trial. *Id.* A fact is material "if it must be

---

2. Is the quitclaim deed executed at the express direction, full acknowledgment and consent of Mr. Petersen by his attorney-in-fact voidable at the option of Mr. Petersen subject to the applicable ten-year statute of limitations which would comport with the need to facilitate the resolution of title disputes in a reasonable amount of time?

[6] *American Jurisprudence* explains:

There are three categories of deeds: void, voidable, and valid. A deed may be cancelled because it is void or because it is voidable. The difference between a void deed and a voidable deed is important under the law because it affects a party's ability to defend against a future purchaser or encumbrancer for value. If the deed is void, it does not pass title and cannot be enforced even if title is later acquired by a bona fide purchaser. In contrast, a voidable real estate transaction is one where a transfer is deemed to have occurred but can be revoked. In that situation, the deed is only voidable. A deed that is merely voidable means that bona fide purchasers are protected against rescission.

22B Am. Jur. 2d Deeds § 163 (footnotes omitted).

decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

The interpretation of a power of attorney is a question of law; therefore, our review of that issue is de novo. *See Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024) (citing *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 750 (Tenn. 2007)).

> In general, "[t]he language of a power of attorney determines the extent of the authority conveyed." *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d at 749 (quoting *Armstrong v. Roberts*, 211 S.W.3d 867, 869 (Tex. Ct. App. 2006)). We interpret a power of attorney "according to [its] plain terms" and "us[e] the same rules of construction generally applicable to contracts and other written instruments." *Id.* at 749–50. A power of attorney should be given "neither a 'strict' nor a 'liberal' interpretation . . . but rather a fair construction that carries out the author's intent as expressed in the instrument." *Id.* at 750. We also must consider any relevant governing statutes and interpret the power of attorney consistently with those laws.

*Id.* at 723–24 (alterations in original) (citation omitted).

## ANALYSIS

### I.

We begin our analysis by introducing the statutory framework that governs powers of attorney in Tennessee.

> The execution of a power of attorney creates a principal-agent relationship. *E.g. Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296–97 n. 1 (Tenn. Ct. App. 2001). Unless otherwise constrained by law or public policy, a person executing a power of attorney may empower his or her agent to do the same acts, to make the same contracts, and to achieve the same legal consequences as the principal would be personally empowered to do. Restatement (Second) of Agency § 17 (1958); 12 Samuel Williston, *Treatise on the Law of Contracts* § 35:9, at 188 (Richard A. Lord ed., 4th ed. 1999).

> The authority of the agent may be couched in general terms and may be as broad as the principal decides to make it. In the absence of specific legal requirements, a power of attorney may be in any form and may be executed in accordance with any recognized common-law method for executing written instruments. *Realty Growth Investors v. Council of Unit Owners*, 453

A.2d 450, 454 (Del. 1982). "The language of a power of attorney determines the extent of the authority conveyed." *Armstrong v. Roberts*, 211 S.W.3d 867, 869 (Tex. Ct. App. 2006). The more specific a power of attorney is concerning the performance of particular acts, the more the agent is restricted from performing acts beyond the specific authority granted. *In re Estate of Kurrelmeyer*, 179 Vt. 359, 895 A.2d 207, 211 (2006); *cf.* Restatement (Second) of Agency §§ 33 cmt. b & 37(2).

A power of attorney is a written instrument that evidences to third parties the purpose of the agency and the extent of the agent's powers. *Lempert v. Singer*, 766 F.Supp. 1356, 1360 (D.Vi.1991); *Realty Growth Investors*, 453 A.2d at 454; *Ho v. Presbyterian Church of Laurelhurst*, 116 Or.App. 115, 840 P.2d 1340, 1343 (1992); *Schall v. Gilbert*, 169 Vt. 627, 741 A.2d 286, 289 (1999). It should be construed using the same rules of construction generally applicable to contracts and other written instruments, except to the extent that the fiduciary relationship between the principal and the agent requires otherwise. *In re Trust of Jameison*, 300 Mont. 418, 8 P.3d 83, 87 (2000); *In re Estate of Littlejohn*, 698 N.W.2d 923, 925 (N.D.2005); Restatement (Second) of Agency § 32.

The legal effect of a written contract or other written instruments is a question of law. *In re Trust of Jameison*, 8 P.3d at 86–87 (power of attorney); *In re Estate of Littlejohn*, 698 N.W.2d at 926 (power of attorney); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn.1999) (written contract). Thus, powers of attorney should be interpreted according to their plain terms. *Muller v. Bank of Am., N.A.*, 28 Kan.App.2d 136, 12 P.3d 899, 902 (2000); *see Buettner v. Buettner*, 183 S.W.3d 354, 359 (Tenn. Ct. App. 2005). There is no room for the construction of a power of attorney that is not ambiguous or uncertain, and whose meaning and portent are perfectly clear. *See Geren v. Geren*, 29 Kan.App.2d 565, 29 P.3d 448, 451–52 (2001). However, when the meaning of a power of attorney is unclear or ambiguous, the intention of the principal, at the time of the execution of the power of attorney, should be given effect. *Brookfield Prod. Credit Ass'n v. Weisz*, 658 S.W.2d 897, 899–900 (Mo.Ct.App.1983); Restatement (Second) of Agency § 34 cmt. b. While the parol evidence rule applies, Restatement (Second) of Agency § 48, the courts may arrive at the meaning of a power of attorney by considering the five factors identified in Restatement (Second) of Agency section 34.

*Tenn. Farmers*, 239 S.W.3d at 749–50 (footnote omitted).

The power of attorney executed by Plaintiff expressly provides in paragraph 7 that Defendant's power of attorney "shall not be affected by the subsequent disability or incapacity of the principal." A written power of attorney that states that it is not affected

by the subsequent disability or incapacity of the principal is a "durable power of attorney." *See* Tenn. Code Ann. § 34-6-102;[7] *see also Tenn. Farmers*, 239 S.W.3d at 748 ("The power of attorney executed by Langley provides that it 'shall not be affected' by her subsequent disability or incapacity, if any. Consequently, the instrument at issue is a durable power of attorney, which should be construed in light of the Uniform Durable Power of Attorney Act, Tennessee Code Annotated sections 34-6-101 to -110 (2001)[.]").

Because Plaintiff's power of attorney expressly provides that it "shall not be affected by the subsequent disability or incapacity of the principal," we shall construe Plaintiff's power of attorney "in light of the Uniform Durable Power of Attorney Act, Tennessee Code Annotated sections 34-6-101 to -110." *See Tenn. Farmers*, 239 S.W.3d at 748.

> The Uniform Durable Power of Attorney Act—or Uniform Act, for short—establishes a legal framework to govern durable powers of attorney. *See* Uniform Durable Power of Attorney Act, ch. 299, §§ 1–13, 1983 Tenn. Pub. Acts 509–11 (codified as amended at Tenn. Code Ann. §§ 34-6-101 to -112 (1984)). The Act enumerates twenty-two non-exclusive categories of authority that a principal **may** grant to an attorney-in-fact simply by incorporating that statutory provision by reference. *See* Tenn. Code Ann. § 34-6-109 (2001). The Act further provides, however, that these enumerated categories should not be construed "to vest an attorney in fact with, or authorize an attorney in fact to exercise" certain specified powers. *Id.* § 34-6-108(c) (2001). . . . A principal is always free, however, to grant an attorney-in-fact that power, as well as other powers that are not enumerated in section -109 or that are excluded under section -108. *See id.* § 34-6-108(b)(1). Similarly, a principal may "[d]elete any of the powers otherwise granted in [section -109]." *Id.* § 34-6-108(b)(2).

*Williams*, 685 S.W.3d at 724 (footnote omitted) (emphasis added).

As Defendant correctly states, Plaintiff's power of attorney did not incorporate by reference section -109 of the Uniform Durable Power of Attorney Act ("the Uniform Act"), and it did not expressly adopt the categories enumerated in that provision. When the power of attorney does "not mention any provisions of the [Uniform] Act" or "otherwise clearly

---

[7] Tennessee Code Annotated § 34-6-102 states in its entirety:

A durable power of attorney is a power of attorney by which a principal designates another as the principal's attorney in fact in writing and the writing contains the words "This power of attorney shall not be affected by subsequent disability or incapacity of the principal," or "This power of attorney shall become effective upon the disability or incapacity of the principal," or similar words showing the intent of the principal that the authority conferred shall be exercisable, notwithstanding the principal's subsequent disability or incapacity.

express an intention to adopt the language contained in section 34-6-109," resolution of the case "does not involve the application of sections 34-6-108 and 34-6-109." *Tenn. Farmers*, 239 S.W.3d at 749. Thus, the scope of Defendant's authority under Plaintiff's power of attorney is controlled by the language of the power of attorney itself, subject to any other applicable laws. *Williams*, 685 S.W.3d at 725 (citing *Tenn. Farmers*, 239 S.W.3d at 749). And "other applicable laws" include the other sections within the Uniform Act, even though sections 108 and 109 do not apply. Stated another way, although sections 108 and 109 do not apply unless section 109 is expressly incorporated by reference, the other sections of the Uniform Act are still applicable because Plaintiff's power of attorney expressly states that it survives his subsequent disability or incapacity. *See* Tenn. Code Ann. § 34-6-102; *see also Tenn. Farmers*, 239 S.W.3d at 748.

Significantly, we find that section 110 of the Uniform Act applies in this case. This is because the power of attorney at issue expressly bestowed upon Defendant the power "[t]o exercise or perform any act, power, duty, right or obligation whatsoever that I now have." *See* Tenn. Code Ann. § 34-6-110(a). As section 110(a) states:

**If any power of attorney or other writing:**

**(1) Authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do;** or

(2) Evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or to deal with the principal's property;

> **then the attorney-in-fact or agent shall have the power and authority to make gifts, in any amount, of any of the principal's property, to any individuals, . . . in accordance with the principal's personal history of making or joining in the making of lifetime gifts.** This section shall not in any way limit the right or power of any principal, by express words in the power of attorney or other writing, to authorize, or limit the authority of, any attorney-in-fact or other agent to make gifts of the principal's property.

Tenn. Code Ann. § 34-6-110(a) (emphasis added).

As noted earlier, Plaintiff's power of attorney expressly empowered Defendant to do, inter alia, the following acts:

1. **To exercise or perform any act, power, duty, right or obligation whatsoever that I now have**.

* * * *

4. To . . . sell, convey, subject to liens, mortgages and deeds of trust, and hypothecate, and in any way or manner deal with all or any part of the real property whatsoever, tangible or intangible, or any interest therein, that I now own or may hereafter acquire, for me, [o]n my behalf, and in my name, and under such terms and conditions, and under such covenants as said attorney in fact shall deem proper regarding the aforementioned real property;

5. To conduct, engage in, and transact any and all lawful business of whatever nature or kind for me, on my behalf, and in my name regarding the aforementioned real property;

* * * *

7. This Power of Attorney shall not be affected by the subsequent disability or incapacity of the principal.

(Emphasis added). Based on these express declarations and the fact that Plaintiff's power of attorney constitutes a durable power of attorney,[8] the powers set forth in section 110 of the Uniform Act are incorporated in the power of attorney at issue. Because section 110 is applicable, Defendant had the authority "to make gifts, in any amount, of any of Plaintiff's property, to any individuals, . . . in accordance with [Plaintiff's] personal history of making or joining in the making of lifetime gifts." *Id.* Thus, we respectfully disagree with the trial court's finding that the power of attorney at issue did not authorize Defendant "to make gifts, or grants", as well as its finding that Plaintiff "did not grant [Defendant] the authority to transfer his property by gift – to her or to any third party." As a consequence, we vacate the trial court's ruling that the quitclaim deed conveying a one-half interest in the Fowler Ford property to Defendant was void ab initio and its decision to grant summary judgment in favor of Plaintiff on that basis.

The foregoing notwithstanding, questions remain concerning whether the gift of the Fowler Ford property to Defendant was in accordance with Plaintiff's personal history of making gifts and whether Defendant breached her fiduciary duty to Plaintiff by conveying the property to herself for no consideration. These questions are at issue because Plaintiff's

---

[8] As noted earlier, because Plaintiff's power of attorney expressly provides that it "shall not be affected by the subsequent disability or incapacity of the principal," we construe Plaintiff's power of attorney "in light of the Uniform Durable Power of Attorney Act, Tennessee Code Annotated sections 34-6-101 to -110." *See Tenn. Farmers*, 239 S.W.3d at 748.

- 13 -

first amended complaint alleges that Defendant's conduct was a clear example of unlawful self-dealing and constitutes a breach of the fiduciary duty that she owed to Plaintiff. Conversely, Defendant asserts in her answer that Plaintiff instructed her to convey the property to herself and that he subsequently ratified her actions by telling others that he approved of the conveyance. She also contends that Plaintiff's claims are time barred, which is at issue because the deed was not void ab initio. Because these questions cannot be answered by this court based on the record before us, this matter is remanded to the trial court for further proceedings.

## CONCLUSION

For the foregoing reasons, we vacate the trial court's decision and remand for further proceedings consistent with this opinion. Costs of appeal are assessed against the parties jointly and severally.

_____
FRANK G. CLEMENT JR., P.J., M.S.