

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00056-CV

———————————————

IN THE ESTATE OF WILLIAM B. BOOTH, DECEASED

On Appeal from Probate Court No. 1
Tarrant County, Texas
Trial Court No. 2013-PR02380-1-B

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

This case presents a classic inheritance dispute between competing wings of a blended family over funds in joint and separate marital accounts. The appeal follows a traditional summary judgment rendered against Appellant Lynda Knight's suits against Appellees Beverly Tuggle and John Rutherford III for breach of fiduciary duty, common law fraud, fraud on the community, theft, and declaratory relief.

In two issues, Appellant argues that the trial court erred by (1) not declaring judgment on the submitted questions in her declaratory-judgment action and (2) denying her traditional motion for summary judgment but granting Appellees's traditional motion for summary judgment on the remaining causes of action. We will affirm in part and reverse in part on the declaratory-judgment action, and we will remand for further proceedings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

William Booth (Bill) and Doris Rutherford married in 1991. They did not have children together, but both had children from prior marriages. Appellant is Bill's granddaughter, and Appellees are two of Doris's children.

Before marrying, Bill and Doris executed an Agreement in Contemplation of Marriage (ACM). The ACM provided that their separate property—including Bill's home—would remain as such after marriage, including all property acquired by gift, devise, or descent. The ACM further provided that Bill and Doris would create a

joint bank account and that any money deposited into the account by either party would become joint property. During their marriage, Bill and Doris had several joint and separate accounts with Edward Jones and Chase Bank.

In 2000, Doris executed a will that devised all of her separate property to her children and the residual ("consisting entirely of community property") to Bill if she died first and to her children otherwise. Doris also executed a power of attorney in 2007, which appointed Bill as her attorney-in-fact and then Beverly as her attorney-in-fact if Bill was unable to serve.

In 2009, Bill and Doris moved into an assisted living facility. By that time, Doris's children assisted in the management of the couple's finances, which included paying their bills and filing their taxes. Later that year, Bill instructed Edward Jones to transfer the funds from his separate account into Doris's separate account. A banker from Edward Jones met with Bill in person, and Bill confirmed his request and signed off on the transfer. The following year, Bill sold his home to help pay for the assisted living facility, and he signed the closing documents. The proceeds from the sale were deposited into the couple's joint Chase bank account.

Doris died in 2011, but her will was not immediately probated by her children. Later that year, Appellant was appointed as Bill's guardian, and she began to question Appellees about the couple's property and bank accounts that existed at the time of Doris's death. Bill died in 2013, and Appellant became the executor of his estate. Around the time of his death, Appellant learned of Doris's will and the ACM. In

response, she applied to have Doris's will probated and for the appointment of a temporary administrator. The trial court appointed a temporary administrator who performed an accounting of Doris's assets.

It was ultimately discovered that there were five Chase bank accounts between the couple at the time of Doris's death: (1) a joint checking account, (2) a joint savings account, (3) a joint C.D. account, (4), Doris's separate checking account, and (5) Doris's separate savings account. There were also three Edward Jones accounts: (1) a joint account, (2) Doris's separate account, and (3) Bill's separate account. Finally, Bill had an annuity that made monthly payments to him.

In 2014, concerned that Bill had not received all the money that he was entitled to under the ACM and Doris's will, Appellant sued Beverly, John, and various other of Doris's heirs. She brought claims for (1) breach of fiduciary duty/breach of informal relationship of trust and confidence, (2) civil conspiracy, (3) common law fraud, (4) fraud on the community, (5) intentional interference with inheritance rights, (6) theft of property, and (7) declaratory judgment to declare the "parties rights, status, and other legal relationships arising from the ACM, Doris Booth's Will, Doris Booth's Powers of Attorney, Chase Personal Signature Cards, and the Edward Jones Power of Attorney Affidavit and Indemnification Agreement." She also sought exemplary damages. Appellant alleged that Doris's heirs had misappropriated and failed to disburse to Bill his fair share of funds from the sale of his house, the various accounts, his annuity, and a car that the couple had owned.

4

Appellant also specifically complained of three transfers that were made during the lives and marriage of Bill and Doris:

(1) on or about October 13, 2010, an amount equal to the proceeds of the couple's home was transferred from the joint checking to Doris's separate checking account;

(2) on or about October 19, 2010, funds from Doris's separate checking account were transferred to her separate savings account; and

(3) on or about October 19, 2010, funds from the joint checking account were transferred to Doris's separate checking account.

In 2017, the parties filed traditional motions for summary judgment. In their traditional motion, Appellees argued that Texas law does not recognize Appellant's claims for fraud against the community and intentional interference with inheritance rights. As to the breach of fiduciary duty claim, Appellees maintained that they did not owe a duty and, regardless, did not breach it. In response to the common law fraud claim, they contended that the evidence disproved as a matter of law that they made a false representation or intended for Bill to rely on any representation. For the theft claim, Appellees argued that the evidence disproved that they unlawfully took possession of any property that belonged to Bill. Finally, as to the civil conspiracy claim, they asserted that it was barred by a two-year statute of limitations, could not be maintained without an underlying tort, and no evidence existed to show that a meeting of the minds occurred.

Appellant's traditional motion for summary judgment raised many of the arguments that she raises on appeal. The parties then filed their stipulations,

agreements, and identification of contested issues in the declaratory judgment action to "simplify the submission of the Plaintiff's Petition for Declaratory Judgment." The document outlined thirty-one questions and issues that Appellant asked the trial court to determine in its resolution of her request for declaratory relief.

In 2021, the trial court granted Appellees's traditional motion for summary judgment in full and denied Appellant's traditional motion for summary judgment in full and ordered that Appellant take nothing on her causes of action against Appellees. The trial court made no declarations on the submitted questions. Appellant brought this appeal.[1]

### III. STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A

---

[1]Appellant attempted to appeal these orders once before, and we dismissed the appeal for lack of jurisdiction because her claims were still pending against the remaining defendants—Doris's other heirs. *See Knight v. Tuggle*, No. 02-23-00005-CV, 2023 WL 5967881, at *1 (Tex. App.—Fort Worth Sept. 14, 2023) (mem. op.). She then nonsuited the remaining defendants and again appeals from these orders.

defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Phan Son Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999).

Summary judgment is proper in cases in which the parties do not dispute the relevant facts. *Havlen v. MacDougall*, 22 S.W.3d 343, 345 (Tex. 2000); *see G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296–97 (Tex. 2011) ("The purpose of a summary judgment is to 'provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of [material] fact.'") (quoting *Gaines v. Hamman*, 358 S.W.2d 557, 563 (Tex. 1962)).

## IV. DISCUSSION

### A. FINAL JUDGMENT

As a preliminary matter, we must address whether there is a final judgment. A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Because the law does not require that a final judgment be in any particular form, whether a judicial decree is a final judgment must be determined from its language and the record in the case. *Id.* We thus look at the trial court's order granting Appellees's traditional motion for summary judgment, which provides:

7

"IT IS THEREFORE ORDERED that Beverly R. Tuggle's and John S. Rutherford, III's Traditional Motion for Summary Judgment is hereby GRANTED.

ACCORDINGLY, IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Lynda Knight take nothing on her causes of action against Beverly R. Tuggle and John S. Rutherford."

"Language that the plaintiff take nothing by [her] claims in the case . . . shows finality if there are no other claims by other parties." *Id.* at 205. In addition, "if a defendant moves for summary judgment on only one of [multiple] claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final." *Id.* at 200. Because the trial court's judgment ordered that Appellant take nothing on her causes of action against Appellees and disposes of all pending parties and claims, we conclude that the language shows finality in the judgment.

With this understanding of finality, Appellant complains in her first issue that the trial court erred by not declaring judgment on the submitted questions in her declaratory-judgment action. Generally, the denial of a motion for summary judgment is not appealable. *Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 172 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). But, when both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews both motions and renders the judgment the trial court should have rendered. *See e.g. FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). For this exception to apply, however, both parties must have

sought final judgment relief in their cross-motions for summary judgment or moved for summary judgment on the same issue. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611–12 (Tex. 2012); *CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam).

This position leads us to review Appellant's contention that there were cross-motions for summary judgment. Appellant brought claims against Appellees for (1) breach of fiduciary duty/breach of informal relationship of trust and confidence, (2) civil conspiracy, (3) common law fraud, (4) fraud on the community, (5) intentional interference with inheritance rights, (6) theft of property, and (7) declaratory judgment.

Subsequently, Appellees filed a traditional motion for summary judgment for Appellant's claims of (1) breach of fiduciary duty/breach of informal relationship of trust and confidence, (2) civil conspiracy, (3) common law fraud, (4) fraud on the community, (5) intentional interference with inheritance rights, and (6) theft.[2] Appellant also filed a traditional motion for summary judgment for her claims of (1) breach of fiduciary duty/breach of informal relationship of trust and confidence, (2) civil conspiracy, (3) common law fraud, (4) fraud on the community,

---

[2]Appellees also filed a no-evidence motion for summary judgment for the same claims, which the trial court denied.

9

(5) intentional interference with inheritance rights, (6) theft of property, and (7) **declaratory judgment**.[3]

Appellees and Appellant filed cross-motions for traditional summary judgment on all but one of the causes of action: the declaratory judgment. Appellant moved for summary judgment on the declaratory-judgment action, but Appellees did not. Yet, the trial court rendered judgment that Appellant take nothing on her causes of action against Appellees—despite Appellees not moving for summary judgment on the declaratory-judgment action in their motion. A defendant may not be granted summary judgment on a cause of action not addressed in the summary judgment proceeding. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983). A motion for summary judgment must expressly present the grounds on which it is made, and it must stand or fall based on the grounds expressly presented in the motion. Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 338 (Tex. 1993).

If a summary judgment is erroneously rendered when under the record of the summary judgment proceeding one or more causes of action were not addressed in the movant's motion for summary judgment, the appropriate procedure is to review the judgment granted in favor of the movant, and if it was proper, affirm the trial

---

[3]Appellant requested attorney's fees in her traditional motion for summary judgment as part of her declaratory-judgment action, as well as exemplary damages. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.009, 41.010(b).

court's judgment in part, reverse in part, and remand only the part of the judgment that exceeds the relief requested in the motion. *Bandera Elec. Co-op., Inc. v. Gilchrist*, 946 S.W.2d 336, 336 (Tex. 1997). By not reversing the entire judgment, we avoid the needless relitigation of decided issues and promote judicial economy. *Id.* at 337. We thus treat the judgment as any other final judgment, and we are to consider all matters raised on appeal and reverse only those portions of the judgment that were rendered in error. *Page v. Geller*, 941 S.W.2d 101, 102 (Tex. 1997).

Here, Appellees's responses to Appellant's traditional motion for summary judgment addressed and argued against her request for declaratory relief. Although Appellees's responses articulated why Appellant's motion should be denied, they never expressly moved for summary judgment on the declaratory relief in their motion. Therefore, the trial court could not have granted judgment as a matter of law. *Chase Manhattan Bank v. Lindsay*, 787 S.W.2d 51, 53 (Tex. 1990); *Chessher*, 658 S.W.2d at 564. Consequently, the trial court should have granted only a partial summary judgment on the claims expressly addressed in Appellees's motion. *See Chessher*, 658 S.W.2d at 564. Because the judgment grants more relief than requested in Appellees's traditional motion for summary judgment, we hold that the trial court erred when it ordered Appellant to take nothing on her request for declaratory relief. *See McConnell*, 858 S.W.2d at 339.

## B. APPELLEES'S MOTION TO DISMISS

We next address Appellees's contention that we do not have jurisdiction because the appeal is interlocutory. Appellees base their jurisdictional argument on the grounds that they requested "costs"—which supposedly included attorney's fees—in response to Appellant's declaratory-judgment action and that their request for attorney's fees is still pending.

A trial court's failure to dispose of a pending attorney's fees claim renders a judgment interlocutory. *McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001). Indeed, Section 37.009 of the Texas Civil Practice and Remedies Code permits the trial court to award costs and reasonable and necessary attorney's fees in a declaratory-judgment action; however, Appellees never requested attorney's fees in any of their pleadings or motions. Because Appellees did not request attorney's fees, their argument lacks merit. Accordingly, we conclude that there is not a pending claim for attorney's fees, and we do not dismiss the appeal for want of jurisdiction. Tex. R. App. P. 42.3(a).

## C. SUMMARY JUDGMENT

In Appellant's second issue, she argues that the trial court erred when it denied her traditional motion for summary judgment for affirmative relief but granted Appellees's traditional motion for summary judgment. In the trial court, Appellant pursued several different causes of action, and on each of them, the trial court granted Appellees's traditional motion for summary judgment and denied her traditional motion for summary judgment. On appeal, Appellant confines her claims and only

12

complains of (1) breach of fiduciary duty, (2) breach of informal relationship of trust and confidence, (3) common law fraud and fraud by non-disclosure, (4) fraud on the community, (5) theft and financial exploitation, and (6) exemplary damages. Because she does not raise a genuine issue of material fact on any of these causes of action, the trial court did not err in granting summary judgment in favor of Appellees.

### 1. Breach of Fiduciary Duty

Appellant first contends that Appellees owed and breached a fiduciary duty to Bill, but she fails to establish such a relationship for this claim.

The term "fiduciary" applies to any person who occupies a position of peculiar confidence towards another and can arise in formal and informal relationships. *See Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A fiduciary relationship exists when "the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship." *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980). Formal fiduciary relationships, such as attorney-client, partnership, and trust relationships, arise as a matter of law. *See Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002).

We first address the alleged duty. Apart from her argument for the existence of a formal fiduciary relationship between Bill and Appellees, Appellant furnishes no evidence in support of the formation of such a relationship. She proffers no signed

13

writings, agreements, or oral statements between Bill and Appellees that would constitute a formal fiduciary relationship. Appellant points to Doris's power of attorney—and the agency relationship it established—as an attempted imputation of a fiduciary relationship between Appellees and Bill. *See Vogt v. Warnock*, 107 S.W.3d 778, 782 (Tex. App.—El Paso 2003, pet denied). However, without more, the existence of a formal relationship between Doris and Appellees is not evidence of a supposed duty to Bill.

We next address a purported breach. Appellant asserts that Appellee Beverly breached a fiduciary duty to Doris when she acted outside the scope of her authority by designating herself as Doris's survivor payee. Appellant cites *Armstrong v. Roberts* in support of her argument; however, it is inapplicable to the circumstances of this appeal. 211 S.W.3d 867, 870–71 (Tex. App.—El Paso 2006, pet denied). In *Armstrong*, a daughter breached a fiduciary duty to her father when she used his power of attorney to designate herself as a payee on death. *Id.* Here, there is no such power of attorney between Bill and Appellees. Moreover, Appellant has no standing to complain of dealings between Appellees and Doris, and her argument lends no evidence of a breach in an alleged fiduciary duty to Bill. Outside of this incident between Beverly and Doris, Appellant identifies no other conduct that amounts to a breach to Bill.

"Standing" is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d

14

659, 661–62 (Tex. 1996). Standing requires that there be (1) "a real controversy between the parties" that (2) "will be actually determined by the judicial declaration sought." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). Appellant does not have a justiciable interest in the fiduciary relationship between Appellees and Doris, as she would not be a party to a potential controversy.

We conclude that Appellant does not raise an issue of fact as to the existence of a formal fiduciary duty between Appellees and Bill, and even if there was such a duty, she fails to raise an issue of material fact regarding a purported breach. Accordingly, we hold that the trial court did not err in granting summary judgment.

## 2. Breach of Informal Relationship of Trust and Confidence

Appellant argues that in the alternative to the existence of a formal fiduciary duty, Appellees created and breached an informal relationship of trust and confidence with Bill. For much of the same reasons from our discussion of the formal fiduciary duty, we disagree.

An informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). However, "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship" and such a finding is not made lightly. *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-177 (Tex. 1997).

15

A family relationship, while it is considered as a factor, does not by itself establish a fiduciary relationship. *Moore*, 595 S.W.2d at 508. The existence of a fiduciary relationship must be shown by objective facts, but "mere subjective trust does not create a fiduciary relationship." *Trostle v. Trostle*, 77 S.W.3d 908, 914 (Tex. App.—Amarillo 2002, no pet.). The evidence must show that the "dealings between the parties continued for such a time that one party is justified in relying on the other to act in his best interest." *Carr v. Weiss*, 984 S.W.2d 753, 765 (Tex. App.—Amarillo 1999, pet. denied); *see Stephanz v. Laird*, 846 S.W.2d 895, 902 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

The parties do not dispute that Bill was competent to make financial decisions and transactions. Though a stepparent-stepchild relationship existed between Appellees and Bill, we are left without objective facts to show the existence of an informal relationship of trust and confidence. *Trostle*, 77 S.W.3d at 908. Rather, there is alleged subjective trust founded on Appellees dropping off Bill and Doris's income taxes and paying their assisted living bills. But again, the mere fact that the parties trust one another does not, in and of itself, establish a finding of a confidential relationship. *See Swanson*, 959 S.W.2d at 177. The evidence depicts limited instances of imparted reliance, and we conclude that it does not raise an issue of material fact regarding a relationship of trust and confidence that necessitates a fiduciary duty. Therefore, we hold that the trial court did not err in granting summary judgment.

16

### 3.  Common Law Fraud

Next, Appellant complains that Appellees committed common law fraud and fraud by non-disclosure, but she does not identify what false representations were made to Bill.

We first consider her claim for common law fraud.  A person commits fraud by (1) making a false, material misrepresentation (2) that the person either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that the misrepresentation be acted upon, (4) the person to whom the misrepresentation is made acts in reliance upon it and (5) is injured as a result.  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998) (op. on reh'g); *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 345 (Tex. App.—Fort Worth 2003, pet. denied).

In her traditional motion for summary judgment and now on appeal, Appellant broadly claims that Appellees made "affirmative false representations" to Bill, yet she does not identify what false statements were made to him.  Absent such specificity, she fails to raise an issue of material fact for her claim of fraud.

We next review her claim of fraud by non-disclosure.  A misrepresentation may consist of the concealment or non-disclosure of a material fact when there is a duty to disclose.  *Custom Leasing, Inc. v. Tex. Bank & Trust Co.*, 516 S.W.2d 138, 142 (Tex. 1974); *Miller*, 142 S.W.3d at 345.  This duty arises when one party knows that the other party is ignorant of the true facts and does not have an equal opportunity to

17

discover the truth.  *Miller*, 142 S.W.3d at 345.  Whether a duty to disclose exists is a question of law.  *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).

Appellant must establish a duty to disclose on the part of Appellees, and she may do so by showing that there was a fiduciary or other special relationship requiring disclosure; that Appellees created a false impression by making a partial disclosure; or that Appellees voluntarily disclosed some information and therefore had a duty to disclose the whole truth.  *Guevara v. Lackner*, 447 S.W.3d 566, 578 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.); *BP Am Prod. v. Marshall*, 288 S.W.3d 430, 446 (Tex. App.—San Antonio 2008), *rev'd on other grounds*, 342 S.W.3d 59 (Tex. 2011); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners*, 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

As we have held in her first and second issues—under both a formal and informal relationship—Appellant does not establish that Appellees had a duty to Bill to disclose.  We next evaluate whether any of the other circumstances necessitate Appellees's disclosure.  But again, Appellant's evidence does not provide a specific incident where Appellees either created a false impression by making a partial disclosure or voluntarily disclosed some information that required disclosure of the whole truth.  *See Guevara*, 447 S.W.3d at 578.  Thus, we conclude that Appellees had no duty to disclose, and Appellant does not raise an issue of material fact for her claim of fraud by non-disclosure.

For her claim of common law fraud and fraud by non-disclosure, we conclude that Appellant does not bring forward evidence that raises an issue of material fact. Accordingly, we hold that the trial court did not err in granting summary judgment.

### 4. Fraud on the Community

Appellant asserts that Appellees committed fraud on the community, but Appellant is an impermissible vessel to pursue such a claim.

"Fraud on the community" is the wrongful disposition of community assets—it is "[t]he breach of a legal or equitable duty which violates [the] fiduciary relationship **existing between spouses**." *In re Marriage of Moore*, 890 S.W.2d 821, 827 (Tex. App.—Amarillo 1994, no writ) (emphasis added). The supreme court has held that there is not an independent tort for fraud on the community. *Schlueter v. Schlueter*, 975 S.W.2d 584, 586 (Tex. 1998). Rather, "[a] claim of fraud on the community is a means to an end, either to recover specific property wrongfully conveyed, . . . or . . . to obtain a greater share of the community estate upon divorce, in order to compensate the wronged spouse for his or her lost interest in the community estate." *Id.* at 588.

Appellant faces two insurmountable obstacles to her claim for fraud on the community. First, the transfers in question were made during Bill and Doris's lifetime, and there is no evidence that Bill complained of these transfers. Second, the "community" is deceased, and there is no one with standing to complain of community fraud. Specifically, Appellant's claim is not one spouse against the other,

19

or even a beneficiary against a surviving spouse; rather, it is an executor pursuing a claim against other heirs. We addressed this issue in *Harper v. Harper.* 8 S.W.3d 782 (Tex. App.—Fort Worth 1999, pet. denied).

In *Harper*, an executor of an estate brought a claim for fraud on the community against a surviving spouse—his stepmother. *Id.* at 784. Relying on the supreme court's holding in *Schlueter*, that there is no independent tort cause of action for wrongful disposition by a spouse of community assets, we held that an independent cause of action for fraud on the community does not survive a spouse's death for the benefit of that spouse's estate. *Id.* at 782; *Schlueter*, 975 S.W.2d at 584; *see Jurgens v. Martin*, 631 S.W.3d 385, 418–19 (Tex. App.—Eastland 2021, no pet.) (holding that when a spouse died, the claim for fraud on the community expired, and her estate no longer had a justiciable interest for the purpose of standing).

We conclude the same in this case—when Bill died, so too did a claim for fraud on the community. Appellant has no justifiable interest in a claim of fraud on the community. Therefore, we hold that the trial court did not err in granting summary judgment.

### 5. Theft

Finally, Appellant maintains that Appellees engaged in theft and financial exploitation against Bill; however, she does not explain how their conduct constituted unlawful appropriation.

A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. *See* Tex. Penal Code Ann. § 31.03(a). Appropriation of property by another is unlawful if it is without the owner's effective consent, and consent is not effective if induced by deception or coercion. *See Id.* § 31.03(b)(1); 31.01(3)(A).

Appellant complains of transfers from Bill and Doris's joint account into Doris's separate account. Yet, she does not identify any transfers from the couple's joint account that are attributable—either directly or indirectly—to Appellees's conduct. The only transfers that are traceable to Appellees are found when they moved funds from Doris's separate accounts into their own accounts after her death and pursuant to her will.

Appellant maintains that "there is no evidence, or reasonable inference that can be made, that Bill made a gift of all of his funds to Doris." In this claim, Appellant essentially seeks to challenge inter vivos conveyances made during the lives of a competent, married couple.

A conveyance from one spouse to the other is presumed a gift; however, such a presumption is rebuttable if the contesting party proves a lack of donative intent by clear and convincing evidence. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167–68 (Tex. 1975); *see Ryan v. Ryan*, No. 02-22-00471-CV, 2023 WL 4007393, at *3 (Tex. App.—Fort Worth June 15, 2023, no pet.) (mem. op.). This presumption is unrefuted.

In support of her argument, Appellant does not offer clear and convincing evidence to rebut a presumed donative intent. *Ryan*, 2023 WL 4007393 at *3. Instead, she seeks to have Appellees explain the fairness of the transfers—which is not the standard. *Id.* Thus, absent such a refutation, we presume the transfers between Bill and Doris, during their respective lives, were gifts. This presumption weighs against a conclusion that the account transfers were made without Bill's effective consent.

Appellant also contends that if Bill consented to the transfers, his consent was rendered ineffective by Appellees's deception or coercion. On one hand, Appellant agrees that Bill had legal capacity, while on the other, she claims that due to his age, Appellees committed theft by exploiting his diminished mental state. Appellant insists that but for Appellees's exploitation, Bill would not have otherwise left himself penniless.

However, apart from making an equity argument and underscoring Bill's advanced age, Appellant provides no evidence on how, when, or where Appellees supposedly acted upon his "diminished state" to effectuate theft. She does not provide any statements, threats, or actions undertaken by Appellees that induced a nonconsensual transfer of funds from Bill's account. On the contrary, the record supports that Bill was capable of independently directing the sale of his home and transferring assets to his spouse during their respective lives.

Because Appellant neither identifies an incident of unlawful appropriation nor articulates how Appellees allegedly deceived or coerced Bill to negate his consent, we conclude that she does not raise an issue of material fact for her claim of theft and financial exploitation. Accordingly, we hold that the trial court did not err in granting summary judgment.

### 6. Exemplary Damages

Because Appellant does not prevail on her claims of breach of fiduciary duty; breach of informal relationship of trust and confidence; common law fraud and fraud by non-disclosure; fraud on the community; and theft and financial exploitation, exemplary damages are not appliable, and we need not address them.

Accordingly, we overrule Appellant's second issue.

### V. CONCLUSION

Having held that the trial court erred in granting summary judgment on Appellant's declaratory-judgment action, we reverse the trial court's judgment as to the declaratory-judgment action and remand the case to the trial court for further proceedings on this issue. Having overruled Appellant's second issue, we affirm the other portions of trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered: April 17, 2025

23